Loretta **WALSH**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–86–00351–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 3, 1987.

Greg Gladden, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., Timothy G. Taft and Patrick Kelley, Harris County Asst. Dist. Attys., Houston, for appellee.

Before JACK SMITH, LEVY and HOYT, JJ.

## OPINION

LEVY, Justice.

This is an appeal from a conviction for the offense of possession of marihuana. Prior to trial, appellant, Loretta Walsh, filed a motion to suppress evidence obtained by an unlawful search and seizure, which was denied. She then pleaded not guilty and was tried by a jury. The jury found her guilty and sentenced her to confinement for two years. Appellant appeals her conviction asserting three points of error.

The record reflects that on February 24, 1986, appellant checked two suitcases at the Delta Airlines ticket counter at Hobby Airport. She was observed by Officer Doyle G. Green of the Houston Police Department, who was investigating narcotics traffic at the airport. Officer Green, based on his observations, concluded that the appellant could possibly be carrying narcotics and started down to the baggage area to alert his partner, Officer Mike L. Cochran. On his way down, Green met Cochran who was coming to tell him that Barney, the trained narcotics detection dog, had "alerted" on two pieces of baggage. The two bags Barney had responded to looked like the bags Green had seen the appellant check at the Delta counter. Both bags bore identification tags with the name "Carlene Miller" on them. The officers returned to the Delta counter and had "Carlene Miller" paged to come to the counter. Appellant responded to the page.

Officers Green and Cochran then identified themselves as police officers and explained that Barney had "alerted" on two pieces of luggage bearing the name "Carlene Miller." The officers asked the appellant to accompany them back to the luggage area where the two bags were being held, and she agreed to go with them. Upon arrival, the appellant identified the bags as hers. She was told that the bags might contain narcotics and was asked whether she would mind if the officers opened the bags. Appellant consented to the search. The locks on the suitcases were broken open, and the search revealed that both cases were filled with marihuana.

Appellant argues in her first and third points of error that the motion to suppress should have been granted. She asserts that the "sniff search," the stop, and the visual search were unreasonable because they were not based on probable cause, reasonable suspicion, or on specific articulable facts that would lead to a reasonable belief that her luggage contained contraband, and also because the officers did not obtain a warrant prior to the search. She further avers that the narcotics detection dog whose "alert" to her luggage was relied upon to establish grounds for the search of the luggage was unreliable, thereby causing the search to be unreasonable and therefore unconstitutional.

The United States Supreme Court has held that exposing luggage, located in a public space, to a trained canine does not amount to a "search" within the meaning of the Fourth Amendment, *United States v. Place*, 462 U.S. 696, 707, 103 S.Ct. 2637, 2645, 77 L.Ed.2d 110 (1983), and therefore does not require probable cause. The Supreme Court further said that a negative result in a canine "sniff test" of luggage for the presence of narcotics frees the pos-

sessor of the luggage to go on his way in short order, but that a positive result is grounds for his justifiable arrest based on probable case. *Florida v. Royer*, 460 U.S. 491, 506, 103 S.Ct. 1319, 1329, 75 L.Ed.2d 229 (1983).

■ It appears that under *Place* and *Royer*, an "alert" on luggage by a dog properly trained to detect the presence of narcotics provides the probable cause to allow police detention up to and including actual arrest. In the instant case, however, there was *no* detention because appellant agreed to accompany the officers to the baggage area and thereafter consented to the search. Thus, no probable cause was required.

Appellant urges that the dog that "alerted" on her luggage was unreliable, rendering the resultant search unreasonable and therefore unconstitutional. *Place* does not address the issue of reliability on the canine detective, merely stating instead that:

> [a] "canine sniff" by a well-trained narcotics detection dog ... does not require opening the luggage. It does not expose noncontraband items that otherwise would remain hidden from public view, as does, for example, an officer's rummaging through the contents of the luggage.... Moreover, the sniff discloses only the presence or absence of narcotics, a contraband item.

*Place*, 462 U.S. at 707, 103 S.Ct. at 2644.

It is well documented that these dogs are not fool-proof in their detection, and their use has led to serious intrusions upon the privacy of innocent people. In *Doe v. Renfrow*, 475 F.Supp. 1012 (N.D.Ind.1979), *aff'd in part*, 631 F.2d 91 (7th Cir.1980), a dog alerted to a 13–year–old girl during a school-wide "sniff" of all students. The girl was subjected to a search of her clothing and then to a nude search by two women. No drugs were found. It was eventually determined that the girl had played with her pet dog at home that morning and the narcotics detection dog was "alerting" not to the scent of the drugs but to the scent of the other dog. The record before us also contains evidence that Barney was inaccurate at least 10% of the time, and that he was also known to "alert" on luggage that had previously held narcotics but that was empty of drugs at the time of the "sniff."

The United States Supreme Court has failed to establish guidelines for the reliability of "sniff" searches but, in spite of their relatively minor inaccuracies, we are required to find probable cause for a search and even for an arrest based on a trained canine's "alert." *See Royer*, 460 U.S. at 491, 103 S.Ct. at 1321; *Place*, 462 U.S. at 696, 103 S.Ct. at 2639. Barney was trained and certified for narcotics detection, and he "alerted" on appellant's luggage, thus establishing probable cause for the search. The absence of a search warrant urged in appellant's first point of error will be considered along with the consent issue raised in her second point of error.

Appellant's first and third points of error (except as to the warrant requirement issue) are overruled.

Appellant's second point of error asserts that the appellant's alleged consent to the officers' search of the bags was, at most, merely a peaceful submission to the officers' display of official authority and was therefore involuntary, where appellant was surrounded by law enforcement officials who implied by their demeanor that the search was inevitable whether appellant gave her consent or not. Along with this contention, we will also address the search warrant issue raised in the first point of error.

One of the specifically established exceptions to the rule requiring both probable cause and a warrant is a search conducted pursuant to consent. *Kolb v. State*, 532 S.W.2d 87, 89 (Tex.Crim.App.1976). The protection guaranteed by the Fourth Amendment may be waived by an individual consenting to a search. *Id.* However, before consent can be effective, the prosecution must prove by clear and convincing evidence that the consent was given freely and voluntarily. *Rumbaugh v. State*, 629 S.W.2d 747, 751 (Tex.Crim.App.1982).

At the hearing on the motion to suppress, the *only* testimony offered concerning the consent and subsequent search was given by Officers Green and Cochran and by Barney's dog handler, a canine enforcement officer for the U.S. Customs Service. The evidence showed that at the time the appellant consented to the search, she was in the presence of two undercover Houston Police officers who wore street clothes, two U.S. Customs officers who were in uniform and wearing guns, the dog handler, and Barney, the detection dog. There was unrefuted testimony that the officers asked the appellant for permission to look in the bags and also told her that she did not have to allow the search. Appellant then consented by stating, "I don't care, that is fine." There was further testimony that she was totally cooperative throughout the process. After hearing the evidence on appellant's motion to suppress, the trial judge found in his findings of fact and conclusions of law that the officers had asked appellant for permission to search the luggage, that appellant was advised she did not have to allow the search, and that she voluntarily, without threats or coercion, or promise of benefit, freely consented to the search of her bags in which the marihuana was found. The statement of facts for the hearing on the motion to suppress supports these findings and conclusions. No testimony, from the appellant or otherwise, showing the use of coercion, subtle or obvious, was offered or revealed on cross-examination. We conclude that appellant's consent to the search was freely and voluntarily given, thus eliminating the requirement for a warrant prior to the search.

At trial, Officer Cochran testified that the suitcases were locked and the locks had to be broken before the bags could be opened and searched. Appellant did not give the officers keys to the locks, and she did not voluntarily unlock the suitcases. The record does not reflect whether she had the keys. While this evidence may have been relevant to the issue of voluntary consent, it was not introduced at the pretrial hearing on the motion to suppress, nor was it enlarged upon at trial. Because of the absence of further evidence concerning the locks on the luggage and due to the absence of any evidence of coercion, appellant's second point of error is overruled along with the search warrant issue raised in point of error one.

The judgment of the trial court is affirmed.