**$217,590.00 IN UNITED STATES CURRENCY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–95–354–CV.**

Court of Appeals of Texas,
Corpus Christi.

Aug. 31, 2001.

G. Rudolph Garza, Jr., Corpus Christi, for appellant.

John Grogan Kearney, Corpus Christi, Brian Kelly Johnson, Office Of The Attorney General, Don Clemmer, Assistant Attorney General, Austin, for appellee.

Before Chief Justice VALDEZ and Justices YAÑEZ and CASTILLO.

**OPINION ON REMAND**

Opinion by Justice YAÑEZ.

This case is before this Court on remand from the Texas Supreme Court. We affirm.

### Background

On April 3, 1994, while patrolling along U.S. Highway 59 in Bee County, Texas, Department of Public Safety (DPS) Trooper Jimmy Moore pulled over a commercial motor vehicle traveling without a tire mud flap. Henry Perez Olvera was the driver of the vehicle, with his common-law wife and their infant child as passengers. Moore questioned Olvera and his wife about the nature of Olvera's cargo and destination, and performed a commercial motor vehicle inspection. Upon conclusion of this inspection, Moore inquired whether any contraband was on board the vehicle. After Olvera responded in the negative, Moore asked for permission to search the vehicle, and Olvera assented. Moore then called a narcotics-detection dog and its civilian handler to the scene. The dog alerted to the presence of narcotics on the tractor portion of the vehicle. Moore instructed Olvera to drive his vehicle to the Bee County Sheriff's Department for a more thorough search, whereupon a paper bag containing $ 217,590 in United States currency and what were believed to be marihuana cuttings were discovered in the tractor cabin, concealed in the compartment which typically contains an air-conditioning unit. After *Miranda*[1] warnings were administered, Olvera told DPS Sergeant-investigator James O'Burke that he knew the money was proceeds from drug sales.

On April 20, 1994, the State filed a notice of seizure and intended forfeiture of

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

the $217,590, which the State amended on June 2, 1994. On May 25, 1994, Olvera filed a plea in bar, special exceptions, original answer, and motion for return of the currency. The court denied the plea in bar following a hearing. On April 20, 1995, the forfeiture proceeding was tried to the court, and the court rendered a final judgment of forfeiture to the State of Texas.

Olvera filed an appeal, raising nine points of error. Initially, this Court sustained Olvera's first point of error and abated the appeal in order to have the trial court issue findings of fact and conclusions of law necessary for the disposition of the appeal. Following the trial court's filing findings of fact and conclusions of law, this Court reversed the trial court's judgment and remanded the case, holding that Olvera had not given positive and unequivocal consent to the search which ultimately uncovered the money that was the subject of the forfeiture proceeding. *$217,590.00, in U.S. Currency v. State,* 970 S.W.2d 660 (Tex.App.—Corpus Christi 1998), *rev'd* 18 S.W.3d 631 (Tex.2000). The State appealed to the Texas Supreme Court, which held that Olvera had voluntarily consented to the search, and reversed and remanded the case for further consideration by this Court. *State v. $217,590.00 in United States Currency,* 18 S.W.3d 631 (Tex.2000). The supreme court specifically directed us to consider points of error six and seven. *Id.* at 635–36. According to the supreme court's opinion, these points raise challenges concerning the scope of Olvera's consent and a "contention that the evidence was factually insufficient to support the trial court's conclusion that the cash in

Olvera's possession was contraband." [2] *Id.* at 635.

Although point of error six does raise arguments about the scope of Olvera's consent, point of error seven does not challenge the factual support for the trial court's conclusion that the cash was contraband, but rather, challenges the trial court's holding that there was a reliable dog alert which constituted a basis for probable cause to continue searching Olvera's vehicle. The challenge to the factual sufficiency of the court's conclusion was raised in point of error nine. This Court disposed of a portion of the arguments raised in point of error nine, but did not address the factual sufficiency portion. *$217,590.00, in U.S. Currency v. State,* 970 S.W.2d at 668. Because we are required under the rules of appellate procedure to address every issue raised and necessary to the final disposition of the appeal, we will address the factual sufficiency challenge raised in point of error nine, as well as the issues raised in points of error six and seven. *See* TEX.R.APP. P. 47.1. We will first address Olvera's argument that the dog alert did not constitute probable cause because the dog was unreliable.

### The Reliability of the Dog Alert and Probable Cause

With his seventh point of error, Olvera argues that "the trial court erred in holding that there was a reliable dog alert which provided the basis for probable cause to continue searching appellant's vehicle." Olvera raised his challenge to the reliability of the dog alert in a motion to suppress. The hearing on his motion to

2. In his appellate brief, Olvera raised nine points of error. As discussed, the first point was sustained, and resulted in the appeal being abated until the trial court issued findings of fact and conclusions of law. Following the filing of the findings of fact and conclusions of law, this Court overruled Olvera's second, third, fourth and ninth points or error, sustained Olvera's fifth and eighth points of error, and did not address his sixth and seventh points of error.

suppress took place immediately prior to his trial, and resulted in the trial court denying the motion.

■■■ In a suppression hearing, the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000); *State v. Ballard*, 987 S.W.2d 889, 891 (Tex.Crim.App.1999); *see State v. $217,590.00*, 18 S.W.3d at 634 (applying standards developed in criminal cases to suppression issues raised in a civil case). The judge may believe or disbelieve all or any part of a witness's testimony. *Ross*, 32 S.W.3d at 855. We afford almost total deference to a trial judge's determination of historical facts that the record supports, especially when the findings are based on an evaluation of credibility and demeanor. *Id.* at 856; *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). If the record supports the trial court's evidentiary findings, the reviewing court is not at liberty to disturb them. *State v. $217,590.00*, 18 S.W.3d at 634.

During the hearing on the motion to suppress, Olvera produced Dr. Dan Craig as an expert witness on the standards required for a narcotics detection dog to be properly trained. Dr. Craig concluded that the training of Nemo, the drug dog involved in searching Olvera's truck had been insufficient. Dr. Craig testified that the methods used by the dog handler to maintain Nemo's proficiency were insufficient to eliminate false alerts and, in fact, could have trained Nemo to alert based not on the presence of narcotics, but rather on the presence of the handler and DPS trooper involved in Olvera's stop.[3] Dr. Craig stated that it was possible that

Nemo was influenced by his handler's belief that narcotics were present. Dr. Craig also stated his belief that the record-maintenance of the dog-handler was inadequate.

The trial court also heard testimony from the dog-handler, Walter Wilburn. Wilburn testified that Nemo was trained to alert to the odor of narcotics. Wilburn testified that he did not record every search involving Nemo. He also stated that his record showed that on numerous occasions Nemo alerted and no drugs were found. However, Wilburn stated that because narcotics can leave a residue which is detectable by a dog's sense of smell, the alerts were not necessarily erroneous. Wilburn noted that on some of the occasions in which no narcotics were found when Nemo alerted, the odor was noticeable to him as well as the officer involved, strongly indicating that there had been drugs present shortly before the search.

Trooper Moore testified that he detected the odor of burnt marihuana in the sleeper compartment of the tractor after being informed that Nemo had alerted on that area of the tractor.[4]

■ The trial court found that following Olvera's consent to the search, a search was conducted by a "trained dog and handler" and that the dog was attracted to the smell of narcotics in the cab of the tractor. Despite the testimony of Olvera's expert challenging the reliability of the dog search, we must defer to the trial court's factual determination that the search was carried out by a trained dog and handler. *See State v. $217,590*, 18 S.W.3d at 634 (if the record supports the trial court's evidentiary findings, the appellate court is not

---

3. Officer Moore had occasionally assisted in training sessions with Nemo by concealing drugs in vehicles used for testing Nemo's ability to discover concealed drugs.

4. Trooper Moore had not entered the sleeper compartment prior to the search with Nemo.

at liberty to disturb them); *see also Guzman*, 955 S.W.2d at 89 (appellate court affords almost total deference to trial judge's determination of historical facts that are supported by the record).

■■ Having found that the trial court's factual findings are not erroneous, we now consider the trial court's application of the law to the facts. *Ross*, 32 S.W.3d at 856. We review the trial court's application of the law of search and seizure to the facts under a *de novo* standard of review. *Id.* On a question of the application of law to facts, we review the evidence in the light most favorable to the trial judge's ruling. *Amir v. State*, 45 S.W.3d 88, 90 (Tex.Crim.App.2001); *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex.Crim.App. 2000). It is well-settled that a trained narcotics dog's positive alert for drugs is sufficient to establish probable cause for an arrest. *De Jesus v. State*, 917 S.W.2d 458, 461 (Tex.App.—Houston [14th Dist.] 1996, pet. ref'd); *Bunts v. State*, 881 S.W.2d 447, 450 (Tex.App.—El Paso 1994, pet. ref'd); *Walsh v. State*, 743 S.W.2d 687, 689 (Tex.App.—Houston [1st Dist.] 1987, pet. ref'd). Because the trial court found that the search was conducted using a trained narcotics dog, which alerted to the presence of narcotics in the sleeper portion of the tractor, we hold that trial court did not err in finding the dog alert to be probable cause for the more intensive search of the tractor, which ultimately uncovered the money at issue in this case. Point of error number seven is overruled.

### The Scope of Olvera's Consent

In his sixth point of error, Olvera argues that his consent to a search did not include consent to a search by a narcotics detection dog and further the "trial court erred in holding that [Olvera's] consent to search included in its scope a consent to be arrested and taken to the Bee County Sheriff's Department for further searches."

■■ The extent of a search is limited to the scope of the consent given, and the scope of the consent is generally defined by its expressed object. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997); *Vargas v. State*, 18 S.W.3d 247, 253 (Tex. App.—Waco 2000, pet. ref'd) (citing *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991)). After Olvera gave consent to the search of the tractor and trailer, Trooper Moore called for a drug detection dog and its handler. The record shows that it was slightly over twenty minutes before the dog and handler arrived. We do not find that, when a motorist consents to a search, this consent necessarily includes a search by a drug detection dog. However, in the instant case Trooper Moore testified to factors which would have justified a dog search absent Olvera's consent.

■■ A police officer may stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks evidence rising to the level of probable cause. *Terry v. Ohio*, 392 U.S. 1, 29, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Woods v. State*, 956 S.W.2d 33, 35 (Tex.Crim.App.1997); *State v. Cerny*, 28 S.W.3d 796, 800 (Tex.App.—Corpus Christi 2000, no pet.). The reasonableness of a temporary detention must be examined in terms of the totality of the circumstances and will be justified when the detaining officer has specific articulable facts, which taken together with rational inferences from those facts, lead him to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Woods*, 956 S.W.2d at 38; *Cerny*, 28 S.W.3d at 800; *Hernandez v. State*, 983 S.W.2d 867, 869 (Tex.App.—Austin 1998,

pet. ref'd). If an officer has a reasonable suspicion that a vehicle contains narcotics, he may temporarily detain it to allow an olfactory inspection by a trained drug detection dog. *Estrada v. State*, 30 S.W.3d 599, 603 (Tex.App.—Austin 2000, no pet.). However, although we recognize that a police office may detain a vehicle to await the arrival of a dog, we stress that the officer must have specific articulable facts that, under the totality of the circumstances raise a reasonable suspicion that the vehicle contains contraband. A stop based on a violation of a traffic regulation will not justify detention to await the arrival of a drug detection dog. A detention pending the arrival of a dog and handler is necessarily a greater imposition on a motorist than conducting a search immediately upon the arousal of a reasonable suspicion.

In the case now before this Court, Trooper Moore testified that there were several things that made him suspicious after he pulled Olvera over. First, he noted that Olvera did not wait for Moore to exit his patrol car, but rather immediately stepped out of the tractor and walked to the back of the trailer. Although Olvera held himself out to be a professional driver, Moore noted that Olvera was unable to read the bill of lading and did not have a log book in his tractor. Moore testified, and the videotape from Moore's patrol car shows, that it took him and Olvera about fifteen minutes, and several trips into the trailer to look at the load, to reconcile the bills of lading with the actual contents of the trailer.

Olvera's explanation about how he had taken possession of the trailer was also questionable. Olvera told Moore that he

had picked up the trailer in a Wal–Mart parking lot. The trailer was not sealed when Moore stopped Olvera and, Olvera explained, had not been sealed when he picked it up. Moore found it highly suspicious that a shipping company would leave a trailer full of freight in a parking lot open to the public, and leave it unsealed, so that its contents would be easily accessible to anyone who wanted to open the trailer doors. The videotape also shows that Olvera had a difficult time explaining the locations of his deliveries. Moore testified that he sought to verify the bills of lading by having his headquarters contact both the shipper and receiver of the freight, but telephone calls to both locations went unanswered.[5]

▮ Olvera was detained for approximately twenty-two minutes between the time that Moore radioed to summon the dog and handler, and the arrival of the dog and its handler.[6] We hold that Moore had articulable facts which, under the totality of the circumstances, justified detaining Olvera for approximately twenty minutes pending the arrival of the drug detection dog for an inspection of the vehicle. After the dog arrived, it was walked around the outside of the tractor and trailer, and alerted at the door of the tractor. The dog's alert on the door of the tractor provided probable cause to conduct a search of the interior of the tractor. *See Gutierrez v. State*, 22 S.W.3d 75, 85 (Tex.App.—Corpus Christi 2000, no pet.) (citing *United States v. Hernandez*, 976 F.2d 929, 930 (5th. Cir.1992)).

Although Olvera also argues that his consent did not extend to the relocation of his vehicle to the Bee County Sheriff's Department for further searching, Trooper

**5.** April 3, 1994, the date of this traffic stop, was Easter Sunday.

**6.** At least some of this time, Moore was also waiting for the results of the efforts to contact the shipper and receiver listed on the bills of lading.

Moore testified that the more detailed searches made at the Sheriff's Department were the product of probable cause based on the dog's alert, not Olvera's consent. When a dog, which has been trained to detect concealed contraband or hidden people, alerts in the near presence of a particular vehicle, that action is sufficient to give rise to probable cause to search that vehicle. *Id.* Once the dog alerted on the sleeper portion of the truck, Trooper Moore had probable cause to search the vehicle. *See id.* Because consent and probable cause are alternative grounds justifying warrant-less vehicle searches, Trooper Moore did not require Olvera's consent to search the tractor once the dog had alerted. *See id.* Point of error number six is overruled.

### Olvera's Ninth Point of Error

In his final point of error, Olvera challenged the legal and factual sufficiency of the evidence linking the seized money to a felony drug transaction. We overruled the legal sufficiency challenge in our original opinion; therefore, we will now address only the factual sufficiency arguments. *See $217,590.00 v. State,* 970 S.W.2d at 668.

In our original opinion, we discussed what is necessary for money to be forfeited to the state:

Money is subject to forfeiture if it is derived from or intended for use in manufacturing, delivering, selling, or possessing a controlled substance. TEX. CODE CRIM. PROC. art. 59.01, 59.02 (Vernon Supp.1998). In forfeiture proceedings, the State must show probable cause for seizing a person's property. TEX. CONST. art. I, § 9; *State v. $11,014.00,* 820 S.W.2d 783, 784 (Tex. 1991). In the context of a forfeiture proceeding, probable cause is a reasonable belief that a substantial connection exists between the property to be for-

feited and the criminal activity defined by the statute. *$56,700 in U.S. Currency v. State,* 730 S.W.2d 659, 661 (Tex.1987)(quoting *United States v. $364,960.00 in U.S. Currency,* 661 F.2d 319, 323 (5th Cir.1981)); *$11,014.00,* 820 S.W.2d at 784.

*Id.*

 When considering a factual sufficiency challenge to a verdict, we consider and weigh all of the evidence. *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406–07 (Tex.1998). We set aside the verdict only if it is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986); *$136,205.00 (Johnson) v. State,* 848 S.W.2d 888, 890–91 (Tex.App.—Houston [14th Dist.] 1993, no writ). Because the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony, we may not substitute our judgment for that of the fact finder. *Pool,* 715 S.W.2d at 634. The court of appeals is not a fact finder, and may not pass upon the witnesses' credibility or substitute its judgment for that of the jury, even if the evidence would clearly support a different result. *Maritime Overseas Corp.,* 971 S.W.2d at 407. Because forfeiture hearings are civil in nature, the burden of proof is a preponderance of the evidence, as opposed to beyond a reasonable doubt. *$136,205.00 (Johnson),* 848 S.W.2d at 891. Trooper Moore testified that after the money was discovered during the search at the Bee County Sheriff's Department, he gave Olvera his *Miranda* warnings. After being informed of his rights, Olvera then explained that he had picked up the money in Philadelphia and was to drop it off in Brownsville, Texas. Moore also testified that he recovered some small pieces of vegetation,

which he believed to be marihuana, from a compartment adjacent to that in which the currency was secreted. A chemist employed by the DPS confirmed that the material Moore found was marihuana.

James Burke, a sergeant-investigator with the DPS, testified that he also spoke to Olvera, after Olvera had told Moore about picking up the money in Philadelphia. Olvera admitted to Burke that the money was "dope money." In his conversation with Burke, Olvera explained that he was to leave his truck, with the keys in it, at a truck stop in Brownsville, from whence it would be transported by some unknown person to Mexico, the money removed, and the truck returned. Burke testified that, based on his experience, this is a common method of transporting profits from drug trafficking to Mexico. Olvera also told Burke that he had met the people for whom he was transporting the money while Olvera was serving time in prison.

The court also heard testimony from Jose Garza, an investigator with the DPS, assigned to the DPS post-seizure analysis unit, which specializes in gathering data on narcotics smuggling, based on DPS traffic stops which uncover narcotics. Garza testified that the facts involved in Olvera's stop were consistent with the methods of transporting money derived from narcotics sales. Garza stated that to acquire $217,590 would require the sale of approximately 110 pounds of marihuana, which would constitute a felony under Texas law.[7]

Along with the testimony of the officers, which was admitted without objection, the record indicates that Nemo alerted on the money, indicating that it was contaminated with drug residue. *See $136,205,00 (Johnson)*, 848 S.W.2d at 891 (although dog alert alone is factually insufficient to support forfeiture of the money, it is evidence to be considered). Although Olvera cross-examined the State's witnesses, he presented no testimony or evidence actually countering the testimony and evidence presented by the State linking the money to drug trafficking.

 We hold that the evidence presented to the trial court was factually sufficient to show that a substantial connection exists between the currency discovered in Olvera's tractor and criminal activity defined by chapter 59 of the Texas Code of Criminal Procedure. We overrule the remaining portion of point of error number nine.

The judgment of the trial court is AFFIRMED.

---

7. Tex. Health and Safety Code Ann. § 481.120(c) (Vernon 1992).