**Ryan William MADDEN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–02–01243–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

March 17, 2005.

Rehearing Overruled June 30, 2005.

Discretionary Review Granted Dec. 7, 2005.

Allen C. Isbell, Houston, for Appellant.

Donald W. Rogers Jr., Assistant District Attorney, Charles A. Rosenthal, Jr., District Attorney–Harris County, Houston, for Appellee.

Panel consists of Justices TAFT, NUCHIA, and KEYES.

**OPINION**

SAM NUCHIA, Justice.

Appellant, Ryan William Madden, was charged by indictment with two paragraphs of felony possession of cocaine with intent to deliver. The State proceeded on the first paragraph alleging cocaine weighing at least 400 grams; the State abandoned the second count involving cocaine weighing 2.9 kilograms. A jury found appellant guilty and sentenced him to 30 years in prison. Appellant, in three points of error, contends that the trial court erred as follows: (1) in denying appellant's motion to suppress the evidence collected from the trunk of the rental car he was driving because he was detained after the traffic offense investigation should have been completed to allow for a narcotics-sniffing dog to arrive; (2) in denying his motion for a mistrial after it became known that the videotape furnished to ap-

pellant by the State was misleading and adversely affected appellant's theory, preparation, and presentation of his case; and (3) in denying his request for an article 38.23 instruction regarding the legality of appellant's continued detention after the investigation on the traffic offense had concluded. We reverse and remand.

## BACKGROUND

On July 10, 2002, Trooper Lawrence Lily of the Texas Department of Public Safety observed appellant exceeding the speed limit by driving 61 miles per hour in a 55–miles–per–hour construction zone on Interstate 10. He also observed another vehicle, a GMC Jimmy, pass appellant's car and begin "riding the bumper" of an 18 wheeler at a speed of 63 miles per hour. Both vehicles had Florida license plates. Lily had received training regarding the tactics of drug convoys and felt that the driver of the GMC Jimmy was seeking to divert his attention from appellant's car by performing an illegal activity. He proceeded to stop both vehicles for speeding.

After both vehicles were stopped, Lily identified himself and asked appellant to step to the rear of his car with his driver's license. Lily testified that appellant's hands were shaking tremendously as he handed Lily his Florida driver's license. Lily further noted that appellant's face was trembling. Lily proceeded to question appellant on where he was coming from and who owned the car. Appellant indicated that he was coming from Burlestine [sic] and that the car was a rental. The direction appellant pointed, according to Lily, did not coincide with the direction appellant said he was coming from. Lily looked at the rental papers for the vehicle. He found that the car was rented in Orlando, Florida and that the rental agreement had expired four days before. Appellant told Lily that he had dealt with the over-

due return of the rental car over the phone. When Lily asked him who he was traveling with, appellant answered that he was traveling by himself.

When asked if he had been arrested for anything previously, appellant responded that he had been arrested for driving while intoxicated. Lily ran a driver's license and criminal history check on appellant and was informed that he had been arrested for larceny in 1996. Lily then requested backup and a Harris County K–9 unit.

When his backup, Trooper Kunz, arrived, Lily questioned the people in the GMC Jimmy. Both of the people in the GMC Jimmy, Michael Johnson and Joseph Watt, also had Florida driver's licenses and said that they knew appellant. This, Lily believed, contradicted appellant's statement that he was traveling by himself. Appellant then told Lily that he misunderstood the question at the time and that he was traveling with Johnson and Watt. Johnson and Watt claimed that they were coming from Arlington, Texas and that they had been there for two days. Appellant told Lily that he stayed with his family while in Texas. However, when confronted with Johnson's and Watt's statements, that they were visiting their family, appellant changed his story, saying that he was traveling with Johnson and Watt and had stayed with their family.

When the K–9 unit arrived, approximately 25 minutes after the request, Lily asked the K–9 handler, Deputy Peterson, to run his dog around the exteriors of the vehicles. Peterson did so and informed Lily that the dog positively alerted for some form of narcotics located both in the trunk of appellant's rental car and in the back of the GMC Jimmy. Lily searched the rental car's trunk and found a container filled with dog food and a sack containing three bricks of cocaine, a rifle, a shotgun, three handguns, and ammunition.

Two-way radios were also found in both cars. No drugs were found in the GMC Jimmy.

## DISCUSSION

■ In his third point of error, appellant contends that the trial court erred by denying his request for a jury instruction regarding the legality of appellant's continued detention after the investigation of his speeding offense should have ended. Appellant argues that there are disputed facts regarding the basis for his detention after the investigation for the speeding offense should have been concluded.

Lily testified that one of the six facts that led to his suspicion that appellant's vehicle contained contraband, and to his continued detention of appellant, was appellant's nervousness, demonstrated by his hands shaking, his fumbling with his wallet, and his face trembling. Appellant claims that a videotape in evidence does not show the shaking, fumbling, and trembling that Lily described.

After the State and appellant rested, the trial court held a charge conference, at which appellant proffered two article 38.23 instructions and requested that they be included in the jury charge. His first requested instruction regarded Lily's reasonable suspicion for the initial stop to investigate the traffic offense, and the second regarded Lily's reasonable suspicion to continue detaining appellant after the investigation of the traffic offense ended.[1] The trial court granted appellant's request for the article 38.23 instruction regarding the initial traffic stop, noting that the videotape showed that appellant had told Lily that he was only going 55 miles per hour, which created a fact issue as to Lily's reasonable suspicion to initiate the traffic stop.

However, the trial court denied appellant's request that the jury charge include the second article 38.23 regarding his continued detention. At the charge conference, appellant's counsel argued that the videotape rebutted Lily's testimony that he observed appellant's hands shaking, appellant fumbling with his wallet, and appellant's face contorting. The trial court responded to appellant's argument as follows:

> I think the record is clear on what you are saying are factual disputes. I do not think that there are factual disputes to

1. The jury instruction denied by the trial court reads as follows:

You are instructed that once a bona fide stop or arrest has been made for a traffic offense, and the police officer, while questioning the motorist regarding the traffic offense, acquires a reasonable suspicion to believe and does believe, that the vehicle contains narcotics possessed contrary to law, he may thereupon continue to detain the vehicle until probable cause arises to search such vehicle.

By the term "reasonable suspicion" as used herein is meant specific articulable facts which, when taken together with rational inferences from those facts, would warrant a man of reasonable caution to believe that an offense has been or is being committed and the continued detention justified.

Now, therefore, bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt that the vehicle driven by RYAN WILLIAM MADDEN was stopped by a police officer in a bona fide stop or arrest for the traffic offense of speeding, and that the officer, while questioning the driver of the said vehicle concerning the traffic offense, acquired reasonable suspicion to believe and did believe that a narcotics offense was being committed, whereupon he continued the detention of RYAN WILLIAM MADDEN and the vehicle beyond the time necessary to effect the investigation for speeding, then you may consider the evidence obtained by the search of the suspect vehicle.

If you do not so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, then you will wholly disregard such evidence recovered in the search of the vehicle, and not consider it as any evidence whatsoever.

be determined by a jury. I think all the things that you are setting out are for an Appellate Court, if it goes there, to decide whether or not those things rise to the level of what they believe in 2002 will allow an officer to keep them there the 15 minutes it took to get the drug dog there and I do not think that there are any factual disputes. I am not going to give you a charge on that. . . .

■ Once investigation of conduct that initiated a traffic stop is concluded, continued detention is permitted only if there is reasonable suspicion to do so. *Woods v. State*, 956 S.W.2d 33, 35, 38 (Tex.Crim.App.1997). To demonstrate reasonable suspicion in this case, the State had to present to the trial court specific articulable facts, which, when combined with rational inferences from those facts, led Lily to reasonably suspect that appellant "had engaged, was engaging, or was soon to engage in criminal activity." *Id.* (applying totality of circumstances test for reasonableness of temporary detention and requiring detaining officer to have specific articulable facts and rational inferences from those facts, leading him to reasonable suspicion of criminal activity). *See also $217,590.00 in United States Currency v. State*, 54 S.W.3d 918, 924 (Tex.App.-Corpus Christi 2001, no pet.) ("A stop based on a violation of a traffic regulation will not justify detention to await the arrival of a drug detection dog . . . [which] is necessarily a greater imposition on a motorist than conducting a search immediately upon the arousal of a reasonable suspicion.").

■ A defendant is entitled to a jury instruction under article 38.23(a) when a fact issue exists regarding the basis for an officer's seizure of evidence. *Davy v. State*, 67 S.W.3d 382, 388 (Tex.App.-Waco 2001, no pet.) (citing *Pierce v. State*, 32 S.W.3d 247, 251 (Tex.Crim.App.2000)). When a fact issue is raised, regardless of the level it rises to, the trial court is statutorily bound to submit an instruction to the jury. *See Jordan v. State*, 562 S.W.2d 472, 473 (Tex.Crim.App.1978) ("The terms of Article 38.23 are clearly mandatory, the only issue being whether under the facts of a particular case an issue concerning the validity of the search is raised by the evidence."); *Reece v. State*, 878 S.W.2d 320, 324, (Tex.App.-Houston [1st Dist.] 1994, no pet.) (same).

Lily testified that he did not think the videotape conclusively showed that appellant was shaking, trembling, and fumbling with his wallet. Lily speculated that this was due to the low quality of the videotape and was not necessarily evidence contradicting his testimony as to one of the six facts upon which he based his reasonable suspicion.

The question of whether Lily's testimony about appellant's conduct is contradicted by what the videotape shows is a fact issue for the jury to decide; that is, the jury had to decide whether appellant was shaking, trembling, and fumbling with his wallet, based on Lily's testimony and the videotape.

■ Therefore, we hold that it was error for the trial court not to give the article 38.23 instruction on the reasonableness of the continued detention. We next apply the harmless error rule of article 36.19[2] to the failure to give the article

---

2. Article 36.19 provides as follows:
Whenever it appears by the record in any criminal action upon appeal that any requirement of Articles 36.14, 36.15, 36.16, 36.17 and 36.18 has been disregarded, the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial

38.23 instruction. *Middleton v. State,* 125 S.W.3d 450, 453 (Tex.Crim.App.2003).

Under this standard, when, as here, a defendant has made a timely objection and there is error, reversal is required if there is "some harm to the accused from the error." *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (op. on reh'g). Thus, we must reverse provided the error is not harmless. *Id.* To determine whether there is harm, we must evaluate "the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.* Some harm means any actual harm, regardless of degree. *Arline v. State,* 721 S.W.2d 348, 351 (Tex.Crim.App.1986). We may affirm cases involving preserved charging error only if no harm has occurred. *Id.* But we must measure the error's harmfulness at least in part against the likelihood that the verdict was actually based on another theory of culpability unaffected by the erroneous charge. *Govan v. State,* 682 S.W.2d 567, 570–71 (Tex.Crim.App.1985), *overruled on other grounds by Brown v. State,* 716 S.W.2d 939, 945 (Tex.Crim.App.1986); *see also Atkinson,* 934 S.W.2d 896, 897 (Tex.App.-Fort Worth 1996) (analyzing harm after remand by Court of Criminal Appeals in *Atkinson v. State,* 923 S.W.2d 21, 27 (Tex.Crim.App.1996), *overruled on other grounds by Motilla v. State,* 78 S.W.3d 352, 356 (Tex.Crim.App.2002)).

We begin our harm analysis by analyzing the jury charge itself. *See Almanza,* 686 S.W.2d at 171. The jury was given an article 38.23 instruction regarding the initial stop for speeding. The jury charge allowed the jury to resolve that factual issue in appellant's favor and not to consider the evidence from the search of the rental car. However, the jury here resolved the factual issue regarding the initial stop for speeding in favor of the State, and the jury charge did not allow resolution of the factual issue of whether Lily had reasonable suspicion to warrant continued detention. Had the jury resolved this second factual issue in favor of appellant, then it would have been instructed not to consider the tainted evidence.

We next examine the state of the evidence, including contested issues and the weight of the probative evidence. *See id.* The evidence in this case bearing on the seizure of the drugs consists of, as previously stated, Lily's testimony, the videotape, and the drugs.

We next examine the arguments of counsel. *See id.* Appellant's counsel told the jury, in opening arguments, that the evidence would show that there was no reasonable suspicion that would justify appellant's continued detention. In closing arguments, appellant's counsel re-asserted the conflict between the videotape and Lily's testimony regarding the signs of nervousness Lily alleged that appellant displayed. But, as the charge was worded, the jury was not allowed to give effect to appellant's counsel's argument regarding the reasonableness of the suspicion leading to appellant's continued detention. The trial court's denial of appellant's requested instruction undermined appellant's best opportunity to get the jury to conclude that the cocaine was illegally seized. Moreover, there is no other theory of culpability that would be unaffected by an erroneous charge. *See Govan,* 682 S.W.2d at 570–71. The prosecutor, of course,

trial. All objections to the charge and to the refusal of special charges shall be made at the time of the trial.

Tex.Code Crim. Proc. Ann. art. 36.19 (Vernon 1981).

highlighted the evidence that appellant "was lying and he was shaking."

After examining the entire jury charge, the jury verdict, the disputed and undisputed evidence, the weight of the probative issues, and the arguments of counsel, we conclude that the failure to provide an article 38.23 instruction regarding appellant's continued detention produced at least some actual harm to appellant. *See Almanza,* 686 S.W.2d at 172. Because this issue is determinative, we need not address appellant's other points of error.

## CONCLUSION

We reverse the judgment of the trial court and remand the cause to the court below for further proceedings consistent with this opinion.

EVELYN KEYES, Justice, dissenting.

I respectfully dissent. I would hold that there was insufficient evidence to raise a fact issue as to the illegality of the search; thus the trial court did not err in refusing to grant an Article 38.23(a) instruction. I would affirm the judgment of the trial court.

### Introduction

Appellant's theory of the case, as explained in the defense's opening argument at trial, was not that appellant was not guilty, but that the evidence of his guilt was illegally obtained. Although appellant filed a pre-trial motion to suppress the evidence of narcotics, he failed to set the motion for hearing prior to trial. Instead, he waited until the officers had testified at trial about the traffic stop, the facts giving rise to Officer Lily's suspicion that appellant was engaged in illegal activities, appellant's detention to permit a drug-sniffing dog to be brought to the scene, the dog's alerting to the trunk of appellant's rental car, the search of the trunk, and the discovery of the cocaine. A videotape of appellant's behavior at the scene had been admitted into evidence, and testimony had been received regarding the seizure, chain of custody, and composition of the three kilograms of cocaine found in appellant's trunk.

Only when the State sought to admit the cocaine into evidence did appellant's counsel object and request that the jury be excused before he stated the grounds of his objection. The court immediately recessed the jury and held a hearing on appellant's motion to suppress the cocaine on the ground that "this is the fruits of an illegal search based upon without *[sic]* probable cause, without reasonable suspicion and in the excessive detention and we object to it and we assert that it should be suppressed." After hearing the arguments of counsel, the court denied the motion to suppress and admitted the cocaine into evidence.

The defendant requested that the trial court instruct the jury both as to (1) its right to disregard evidence obtained without probable cause to stop appellant's vehicle for a traffic violation and (2) its right to disregard the narcotics evidence if they found that Officer Lily lacked reasonable suspicion to continue the detention beyond the traffic stop for a narcotics search. The trial court denied appellant's proffered instruction regarding reasonable suspicion to continue detention, which would have instructed the jury that if they found that the vehicle appellant was driving had been "stopped by a police officer in a bona fide stop or arrest for the traffic offense of speeding, and that the officer, while questioning the driver of the said vehicle concerning the traffic offense, acquired reasonable suspicion to believe and did believe that a narcotics offense was being committed, whereupon he continued the detention of [appellant] and the vehicle beyond the time necessary to effect the investigation

for speeding," they could "consider the evidence obtained by the search of the suspect vehicle," and, if they did "not so find beyond a reasonable doubt," or if they had "a reasonable doubt thereof," they should "wholly disregard such evidence recovered in the search of the vehicle, and not consider it as any evidence whatsoever." The jury convicted appellant, and this appeal ensued.

### Jury Charge

In his third point of error, appellant contends that the trial court erred by denying his request for an Article 38.23(a) instruction regarding the legality of appellant's continued detention after Lily had ended his investigation of appellant's speeding.

Article 38.23(a) provides as follows:

(a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case. In any case *where the legal evidence raises an issue hereunder,* the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this article, then and in that event, the jury shall disregard any such evidence so obtained.

TEX.CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon Supp.2004) (emphasis added). The question, therefore, is whether the legal evidence raises an issue as to whether the cocaine was obtained in violation of law, specifically through an illegal detention to search for narcotics. Appellant argues that because there were disputed facts regarding his detention, an Article 38.23(a) instruction was required to inform the jury of their right to disregard the evidence of the fruits of the search if they

found the detention unreasonable. I disagree with appellant and with the majority that the disputed evidence raises a fact issue as to whether Officer Lily had reasonable suspicion to prolong the detention, warranting an Article 38.23(a) instruction.

*Garza v. State,* 126 S.W.3d 79, 84–85 (Tex.Crim.App.2004), and *Thomas v. State,* 884 S.W.2d 215, 216–17 (Tex.App.-El Paso 1994, pet. ref'd) (discussed in *Garza,* 126 S.W.3d at 84), are both strikingly similar to this case. In *Garza,* the petitioner argued to the Court of Criminal Appeals that the trial court had erred in denying his request for an Article 38.23 jury instruction regarding the legality of the search of his van, in which cocaine was found. *Garza,* 126 S.W.3d at 85. The Court of Criminal Appeals disagreed. While acknowledging that "[a] fact issue about whether evidence was illegally obtained may be raised 'from any source, and the evidence may be strong, weak, contradicted, unimpeached, or unbelievable,'"—as the majority in this case observes—the court nonetheless specifically noted "that an Article 38.23 instruction must be included in the jury charge only if there is a factual dispute about how the evidence was obtained." *Id.* (quoting *Wilkerson v. State,* 933 S.W.2d 276, 280 (Tex.App.-Houston [1st Dist.] 1996, pet. ref'd)).

The *Garza* court held that since the defendant's testimony did not " 'differ significantly' from that of the officers" as to "how the officers discovered the drugs and the paraphernalia," suggestions by the defendant's counsel that the officers were on a fishing expedition did not "rise to the level of creating a fact issue." *Id.* at 86. It stated, "That appellant 'disagrees with the *conclusion* that probable cause was shown as a matter of law' " is not the same as appellant controverting the *facts.* . . . "The question of whether the search was legal is a question of law, as none of the

circumstances surrounding the search were controverted by appellant." *Id.* (emphasis in original).

Similarly, in *Thomas,* the defendant was arrested after a weapons search of his body resulted in the discovery of contraband; the facts of the case showed that, in the process of searching the defendant's outer clothing for a weapon, the officer had developed probable cause to search defendant's pockets for contraband. Therefore, the court held that the defendant's request for an Article 38.23(a) instruction on grounds that the search went beyond the legal scope of the detention was properly denied. *Thomas,* 884 S.W.2d at 215(cited favorably in *Garza,* 126 at 86–87).

In this case, likewise, there is no factual dispute sufficient to raise an issue for the jury as to whether Officer Lilly had reasonable suspicion to continue appellant's detention. There is only a dispute over whether the videotape is sufficiently clear in showing that appellant's hands were not shaking to refute Officer Lily's testimony that appellate was nervous and his hands were shaking. As the Court of Criminal Appeals observed in *Garza,* "That appellant 'disagrees with the *conclusion* that probable cause was shown as a matter of law" is not the same as appellant's controverting the facts of the search. *See* 26 S.W.3d at 86. Even if there is a dispute over appellant's visible nervousness, hence over Officer Lily's credibility in this regard, this dispute is not enough to raise a fact issue as to the legality of the search.

A routine traffic stop is a detention and must be reasonable under both the United States and Texas constitutions. *See Davis v. State,* 947 S.W.2d 240, 245 (Tex.Crim. App.1997). To be reasonable, a traffic stop must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *See Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75

L.Ed.2d 229 (1983); *Davis,* 947 S.W.2d at 243, 245. In making an investigatory detention that stops short of an arrest, the officer's action must be supported by reasonable suspicion to believe that the person or is about to be engaged in criminal activity. *United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 750 (2002). To make a reasonable-suspicion determination, the court must look at the "totality of the circumstances" of the case to see whether the detaining offer had a "particularized and objective basis" for suspecting legal wrongdoing. *Id.* at 273, 122 S.Ct. at 750; *see also $217,590.00 In United States Currency v. State,* 54 S.W.3d 918, 924 (Tex.App.-Corpus Christi 2001, no pet.) (stop based on traffic violation will not justify continued detention to await arrival of drug-detection dog unless officer has specific articulable facts which, under totality of circumstances, raise reasonable suspicion that vehicle contains contraband); *Veal v. State,* 28 S.W.3d 832, 835 (Tex.App.-Beaumont 2000, pet. ref'd). Although an officer's reliance on a mere "hunch" is insufficient to justify an investigatory detention, the likelihood of criminal activity need not rise to the level required for probable cause and falls considerably short of the preponderance of the evidence standard. *Arvizu,* 534 U.S. at 274, 122 S.Ct. at 751. The standard of review of reasonable suspicion determinations is de novo. *Id.* at 276, 122 S.Ct. at 751.

In *Arvizu,* the Supreme Court held that a border patrol agent had reasonable suspicion for an investigatory stop of the defendant's minivan where (1) the stop occurred in a remote area of rural Arizona; (2) it was reasonable for the agent to infer from his observations, his registration check, and his experience that the defendant had set out from a border town along a little-traveled road used by smugglers to avoid a border patrol checkpoint; (3) the

vehicle had turned away from known recreational areas, diminishing the chance that the defendant and his family were on a picnic; (4) the children's elevated knees suggested concealed cargo; and (5) the children's prolonged mechanical waving was odd. *Id.* at 277, 122 S.Ct. at 752–53.

Here, Lily testified to six facts that led to his suspicion that appellant's vehicle contained contraband: (1) the diversionary tactics taken by the GMC Jimmy, which were consistent with the tactics used by drug convoys; (2) appellant's nervousness, including his hands shaking and his face trembling; (3) appellant's uncertainty about his whereabouts while in the state; (4) appellant's statement that he had only been arrested for DWI when he had also been arrested for larceny; (5) the fact that the rental agreement for the vehicle had expired; and (6) the conflicts among appellant's statement that he was traveling alone and had stayed with his family, the statements of the two men in the GMC Jimmy, and appellant's revised statement regarding his stay in the State.[1] The only one of these factors as to which there was conflicting evidence was Officer Lily's testimony regarding appellant's nervousness, which appellant contends was refuted by the videotape of his arrest.

The facts in this case are very similar to those in *Arvizu* and almost identical to those this court found to be sufficient to establish reasonable suspicion in *Sims v. State,* 98 S.W.3d 292, 296–97 (Tex.App.-Houston [1st Dist] 2003, pet. ref'd). In *Sims,* we found that a reasonable suspicion of criminal behavior was justified when (1) another car was traveling in an erratic manner in front of the officer in an apparent attempt to distract the officer; (2) the car contained a "large amount" of air fresheners; (3) the driver of the car was "extremely nervous"; (4) the driver hesitated before she spoke, and the trooper believed that her explanation of where she had come from was internally inconsistent; (5) when the trooper asked the driver to step out from between the cars, she put her hands up as if she were being placed under arrest; and (6) the driver was driving a rental van and was unable to provide the rental agreement paperwork. In both *Arvizu* and *Sims,* applying the totality of the circumstances test, the court found that the officer had reasonable suspicion to detain the driver and the vehicle for a narcotics search.

Appellant relies upon *Veal v. State* to support his argument that Lily lacked reasonable suspicion to detain him long enough for a narcotics dog to sniff the vehicle. *Veal v. State,* 28 S.W.3d at 836–37. *Veal,* however, is distinguishable. In *Veal,* the court held that, although the officer's testimony that he observed the defendant's vehicle abruptly change lanes without signaling and then stop while still in the lane of travel on an interstate highway demonstrated an objectively valid reason for stopping him, despite evidence of a somewhat pretextual nature of the stop, the defendant's wearing a dress shirt and tie late at night, driving from Houston, and taking several seconds to answer where he had eaten that night did not give rise to a reasonable suspicion of criminal activity justifying an investigatory detention. *Id.* at 837.

As in *Arvizu* and *Sims,* while each of the facts Lily testified to here, standing alone, might not give him reasonable suspicion that appellant was involved in some form of criminal activity, the totality of the circumstances plainly supports a finding of reasonable suspicion of such activity, even

---

1. Officer Lily spoke to the occupants of the GMC after his backup had arrived and after he had made the request for a drug-sniffing dog.

if the jury were to decide that the videotape refuted Officer Lily's testimony that appellant was nervous.

An Article 38.23(a) instruction is given only when the legal evidence raises an issue as to whether evidence was obtained by an officer or other person in violation of a provision of law. *See* TEX.CODE CRIM. PROC. ANN. art. 38.23(a). Here, even the jury's determination that the videotape did not show appellant's nervousness would not be enough to show that Officer Lilly lacked reasonable suspicion to continue to detain appellant after the traffic stop ended. Since appellant did not raise an issue as to the legality of his continued detention for a narcotics search, the proffered instruction to the jury to disregard evidence obtained if they found Officer Lily lacked reasonable suspicion to continue the detention would have been improper.[2]

I would hold that the trial court did not err in denying an Article 38.23(a) instruction regarding reasonable suspicion to continue detention. If, however, it was error to fail to charge the jury under Article 38.23(a), I would hold that the error was harmless because five of the six reasons the trooper gave justifying the detention were sufficient as a matter of law.

*Conclusion*

I would overrule appellant's third point of error.

I would affirm the judgment of the trial court.

---

**2.** The standard of proof of reasonable suspicion under the totality of the circumstances test "need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Arvizu,* 534 U.S. at 274, 122 S.Ct. at 751. The instruction requested by appellant and denied by the trial court would have informed the jury that *"if you find from the evidence beyond a reasonable doubt* that the vehicle driven by [appellant] was stopped by a police officer in a bona fide stop or arrest for the traffic offense of speeding, and the officer,

while questioning the driver of the said vehicle concerning the traffic offense, *acquired reasonable suspicion to believe and did believe* that a narcotics offense was being committed, whereupon the continued the detention of [appellant] and that the vehicle beyond the time necessary to effect the investigation for speeding, *then you may consider the evidence obtained* by the search of the suspect vehicle." The proffered instruction misstates the law by establishing a much higher standard for the jury's finding reasonable suspicion than the law requires and is erroneous.