NUMBER 13-05-244-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


GARLAND JEROME VENNUS, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 182nd District Court of Harris County, Texas.


 


MEMORANDUM OPINION



Before Justices Yañez, Rodriguez, and Garza


Memorandum Opinion by Justice Yañez


 

 Appellant, Garland Jerome Vennus, entered a plea of guilty without an agreed
recommendation for punishment and was convicted for the offense of possession with
intent to deliver a controlled substance, weighing more than four grams and less than 200
grams by aggregate weight. (1) Two prior felony controlled substance convictions were
alleged to enhance punishment. The trial court found both enhancement paragraphs true
and sentenced appellant to serve 25 years' imprisonment. The trial court certified the right
to appeal. In three issues, appellant complains that his motion to suppress was
erroneously denied because the State failed to demonstrate the officer had reasonable
suspicion for the prolonged detention necessitated by the wait for the arrival of the
narcotics canine unit after the traffic stop. (2) We reverse and remand. 

I. Factual and Procedural Background

 Three pre-trial motions to suppress were filed by or on behalf of appellant. On
March 16, 2005, the trial court held a pre-trial suppression hearing. At the hearing, the
State presented two witnesses, Houston police officers Benjamin K. Gill, a member of the
Narcotics Division, and Domingo Guerrero, a narcotics canine handler.

 Gill testified to the events of May 6, 2004 that led to appellant's arrest. After
receiving information from a confidential source, Gill stated that he came into contact with
appellant while working undercover conducting surveillance in the area surrounding the
4300 block of Hardy Street in Harris County, Texas. He testified that he believed appellant
was engaging in narcotics transactions. The officer observed appellant pulling away from
the location where he was parked; the officer then followed him. Gill further testified that
appellant made an illegal left turn and failed to signal as he pulled into a filling station. 

 Upon leaving the filling station, appellant was stopped by uniformed officers that Gill
had directed to make the traffic stop. The officers had also been directed to place
appellant in the back of the patrol car for safety reasons and to prevent tampering with any
evidence. The officers then requested appellant's consent to search his vehicle, which he
refused. 

 Officer Gill arrived at the scene and called for a narcotics dog to check the car for
the odor of drugs. There is conflicting evidence regarding how long it took for the narcotics
canine unit to arrive. Gill testified that it took 15 minutes for the canine unit to arrive from
the time it was called, and that a total of 25 minutes passed from the time appellant was
stopped to the time the unit arrived. Officer Guerrero, on the other hand, testified that it
took him about 30 minutes to arrive at the scene after he was called. Therefore, in giving
weight to the testimony of both officers, a finder of fact may deduce that appellant was
detained for 25 to 40 minutes before the canine unit arrived.

 When Officer Guerrero arrived with the dog, he proceeded to permit the dog to
search the outside of the vehicle. The dog alerted officers to the driver's side of the vehicle
near the door. After Guerrero advised Gill of the alert, Gill searched the inside of the
vehicle and recovered 106 grams of marihuana, 12.47 grams of crack cocaine from the
console, and 2.35 grams of crack cocaine from the area above the visor.

 The trial court denied appellant's motion to suppress, finding that the stop was lawful
and the time of the detention awaiting the arrival of the dog was not excessive or
unreasonable.

II. Discussion

A. Standard of Review

 A trial court's denial on a motion to suppress is reviewed for abuse of discretion. (3) 
At a suppression hearing, the trial court is the sole finder of fact. (4) We give almost total
deference to a trial court's determination of historical facts and application-of-law-to-fact
questions that turn on credibility and demeanor. (5) Application-of-law-to-fact questions that
do not turn on credibility and demeanor are reviewed de novo. (6) Where the trial court does
not make explicit findings of actual facts, we review the evidence in the light most favorable
to the trial court's ruling. (7) We will uphold a trial court's ruling admitting the evidence if it is
reasonably supported by the record and is correct on any theory of law applicable to the
case. (8) This is true even if the decision is correct for reasons different from those given by
the trial judge. (9)

B. Burden of Proof

 To suppress evidence on the basis of illegal police conduct, the defendant bears the
initial burden of proof to rebut a presumption of proper police conduct. (10) A defendant
satisfies this burden by establishing that (1) a search or seizure occurred and (2) that no
warrant had been obtained. (11) The burden then shifts to the State where it is required to
either produce a warrant or prove the reasonableness of the search or seizure. (12) The State
may demonstrate reasonableness by proving probable cause. (13)

 In the instant case, the State contends that appellant never met his initial burden;
therefore, the burden to demonstrate the detention's legality never shifted to the State and
any detention, search, or seizure was presumptively reasonable. The State specifically
argues appellant failed to rebut the presumption of proper police conduct because he did
not produce any evidence demonstrating he was subjected to a warrantless search. At the
hearing on the motion to suppress, appellant did not present affirmative testimony that a
warrantless search was conducted of his vehicle. Though appellant generally alleged a
warrantless search and seizure in all three of his motions to suppress, the State asserts
that this Court should not consider the allegations in appellant's motions to determine
whether appellant rebutted the presumption of proper police conduct at the suppression
hearing.

 In Bishop v. State, (14) the Texas Court of Criminal Appeals discussed the role
allegations in a motion to suppress should play in an appellate court's determination of that
motion. In Bishop, the trial court heard the defendant's motion to suppress on affidavits
only and overruled it. (15) On appeal, the court of appeals held that the defendant failed to
meet her burden to rebut the presumption of proper police conduct because her affidavit
contained no statement that the stop and search were conducted without a warrant. (16) 
While the defendant's unsworn suppression motion did claim that she was the subject of
a warrantless arrest, the court of appeals held that she failed to produce any affirmative
evidence because an unsworn motion is not evidence. (17) The court of criminal appeals
reversed the decision, holding that the trial court should have considered the allegation in
the defendant's motion to suppress. (18)

 The State discusses Bishop at length and submits that it was incorrectly decided. 
The State contends that the holding in Bishop conflicts with the general rule that
allegations in pleadings are not evidence and are never self-proving. The State also
argues that Handy v. State, (19) a recent decision from the court of criminal appeals, implicitly
overruled Bishop to the extent that Bishop held that a mere allegation in a motion to
suppress that a search or seizure was warrantless is sufficient to rebut the presumption of
proper police conduct.

 We need not address the State's contentions since they do not directly apply to the
case-at-hand. We find that the present case is more analogous to Russell v. State, (20) than
Bishop. In Russell, the arresting officer testified about the seizure the defendant
challenged at the hearing on the motion to suppress. (21) At no point in his testimony did the
officer state the seizure was warrantless. (22) However, the court of criminal appeals
concluded that "from Officer Graves' testimony it is obvious that no warrant was obtained." 
Therefore, it appears that the court's determination was based on the totality of the officer's
statements at the hearing. (23)

 In the instant case, the hearing on appellant's motion to suppress was recorded and
this Court was given the opportunity to review the testimony of two officers who were
present during appellant's detention. We find that from the officers' testimony, it is obvious
that no warrant was obtained. Furthermore, we note that at the conclusion of the hearing,
the judge stated that the real question was whether or not the time between the stop and
the time the dog alerted was an unreasonable amount of time based on the totality of the
circumstances and knowledge of the defendant, as well as the situation. These statements
implicitly reveal that the judge had also determined that the search was made without a
warrant.

 The State's arguments regarding whether an appellate court can or should consider
the allegations in the motion to suppress are immaterial. We do not look to the allegations
in appellant's motion to suppress to guide our determination, but find, after reviewing the
testimony at the hearing, that appellant did meet his initial burden of rebutting the
presumption of proper police conduct.

C. The Permissible Scope of the Traffic Stop

 Routine traffic stops closely resemble investigative detentions and are governed by
Terry v. Ohio. (24) In Terry, the United States Supreme Court adopted a dual inquiry to
determine the reasonableness of an investigative detention: (1) whether the officer's
action was justified at its inception, and (2) whether it was reasonably related in scope to
the circumstances which justified the interference in the first place. (25) To determine
"reasonableness" we utilize an objective standard, asking whether the facts available to the
officer at the moment of the search or seizure warrant a person of reasonable caution to
believe that the action taken was appropriate. (26) The reasonableness of a temporary
detention is based on the totality of the circumstances. (27) Furthermore, in determining
reasonableness, we balance the nature of the intrusion into an individual's right to be free
of arbitrary detentions and intrusions against the public interest at stake. (28)

 Appellant does not contest the officers' actions in pulling him over for making an
illegal turn and detaining him long enough to check for warrants and write a citation. 
Appellant's challenge concerns the validity of the extension of the routine traffic
investigation to wait for the arrival of the narcotics canine unit. Therefore, our analysis
focuses on the second prong in Terry.

 To be related in scope, the investigation must be limited by the underlying
justification for the stop. (29) An investigative detention must be temporary and last no longer
than is necessary to effectuate the purpose of the stop. (30) The permissible duration of an
investigative detention is measured by the time reasonably necessary to complete a brief
investigation of the matters that justified the stop. (31)

 In the present case, appellant was stopped for the traffic violation of making an
illegal left turn and failing to properly signal. (32) A stop based on a violation of a traffic
regulation will not justify detention to await the arrival of a drug detection dog. (33) Therefore,
detaining appellant for 25 to 40 minutes to wait for the narcotics canine unit cannot be
justified on the basis of the traffic stop alone.

D. Reasonable Suspicion to Detain

 The issue remains whether the State satisfied its burden to demonstrate that officers
had reasonable suspicion of criminal activity that would justify the prolonged detention to
wait for the arrival of the canine unit. Under Terry, a police officer may stop and briefly
detain a person reasonably suspected of criminal activity on less information than is
constitutionally required for probable cause to arrest. (34) An investigative detention is
reasonable when the detaining officer has "specific articulable facts," which taken together
with rational inferences from those facts, lead him to conclude that the particular person
actually is, has been or soon will be engaged in criminal activity. (35) Due weight must be
given, not to the officer's inchoate and unparticularized suspicion or "hunch," but to the
specific reasonable inferences that he is entitled to draw from the facts in light of his
experience. (36) If an officer has a reasonable suspicion that a vehicle contains narcotics, he may
temporarily detain it to allow an olfactory inspection by a trained police dog. (37) While this
Court has recognized that a police officer may detain a vehicle to await the arrival of a
narcotics detection dog, it did so while stressing that the officer must have specific
articulable facts that, under the totality of the circumstances, raise a reasonable suspicion
that the vehicle contains contraband. (38)

 In the case now before this Court, Officer Gill testified that he had arrested appellant
twice before and that he had a reasonable belief that appellant had some kind of
contraband in his car. Gill did not state why he had such a belief; in fact, he testified that
prior to the search, he had not seen any contraband in the vehicle, nor had he observed
appellant involved in anything that appeared to be an illegal drug transaction. While he
testified that he had received information from a confidential informant that prompted him
to conduct surveillance in the area around the 4300 block of Hardy, he did not state what
information was given by the informant or whether it specifically concerned appellant, nor
did he provide any information regarding the informant. As a result, this Court cannot
assess the credibility of the informant or the reliability of the information provided. The
situation before this Court, therefore, is analogous to an attempt to justify an investigative
detention based on an anonymous tip. (39)

 When an investigative detention is based solely on an anonymous tip, the court
often has no way of evaluating the reliability of the information from the anonymous
source. (40) If an anonymous tip has a low degree of reliability, more information will be
required to establish the requisite level of suspicion to justify an investigative detention. (41) 
An anonymous tip may, however, be sufficient if it contains sufficient "indicia of reliability"
or if some aspects of it are sufficiently corroborated. (42) An officer's prior knowledge, his
experience, and his corroboration of the details of the tip may be considered giving the
anonymous tip the weight it deserves. (43) Mere corroboration of details, however, that are
easily obtainable at the time the information is provided will not support a finding of
probable cause nor furnish the basis for reasonable suspicion. (44)

 In the instant case, we have little information regarding the specificity of the third-party information received by Officer Gill; we cannot determine whether the information
contains sufficient indicia of reliability or if some aspects of it are sufficiently corroborated. 
Whatever the information may have been, it is evident that the only details that were 
corroborated were those that were easily obtainable, given that Gill testified to only seeing
appellant drive in the area under surveillance prior to the stop. Furthermore, while Gill did
testify that the area under surveillance had "a lot of narcotics" activity, and that he had
"dealt with [appellant] before," he did not state how he was familiar with appellant, whether
he was aware of appellant's criminal record, if any, or whether he was familiar with
appellant's vehicle. Therefore, while an inadequate tip may be supported by an officer's
prior knowledge and experience, (45) we cannot say that Gill's experience and knowledge
aided the corroboration of the tip.

 We find that the State never established articulable facts to sufficiently support a
reasonable suspicion to detain appellant longer than necessary to write a citation and
check for warrants. At best, the officers possessed only an inarticulable hunch or
speculative suspicion of appellant's wrongdoing. (46) The continued detention of appellant
was in violation of the Fourth Amendment and the Texas Constitution; (47) accordingly, the
trial court erred in not suppressing the evidence. (48)

E. Search was Incident to a Lawful Custodial Arrest

 At the conclusion of its brief, the State asserts that the trial court's suppression
ruling should be upheld because the "court could have reasonably found, and therefore
implicitly found, . . . that the search of appellant's vehicle in the instant case was lawfully
conducted as incident to appellant's warrantless custodial arrest for the traffic offenses of
making an illegal turn and improper signaling." To support this argument, the State cites
to statutes and case law to support the proposition that an officer is authorized to arrest a
person found committing a traffic violation other than speeding, as well as to show that
upon such an arrest, an officer may search the interior of the stopped vehicle.

 We do not believe the trial court could have reasonably concluded that appellant
had been arrested prior to the search of his vehicle. Officer Gill never testified that
appellant was under arrest or that he had been handcuffed; according to Gill, appellant had
simply been placed in a patrol car for "safety reasons" and "to prevent any kind of
tampering with any evidence that might be in the vehicle." In light of this explanation, the
trial court could have only reasonably concluded that appellant was merely being restrained
in the patrol car so that officers could safely investigate the scene while preserving the
status quo. (49) We thus find no merit in the State's argument that the search of appellant's
vehicle was incident to a lawful custodial arrest.

III. Conclusion

 We conclude the trial court erred in overruling the motion to suppress evidence. 
Accordingly, the judgment of conviction is reversed and the cause is remanded to the trial
court.




 

 LINDA REYNA YAÑEZ,

 Justice




Do not publish. Tex. R. App. P. 47.2(b).


Memorandum opinion delivered and filed 

this the 2nd day of August, 2007.

1. Tex. Health & Safety Code Ann. § 481.115 (Vernon 2003).
2. In his three issues, appellant specifically complains that his detention amounted to an unlawful
seizure in violation of the Fourth and Fourteenth Amendments of the United States Constitution, as well as
article 1, section 9 of the Texas Constitution. U.S. Const. amends. IV, XIV; Tex. Const. art. I, § 9.
3. Balentine v. State, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002); Carmouche v. State, 10 S.W.3d 323,
327 (Tex. Crim. App. 2000).
4. Arnold v. State, 873 S.W. 2d 27, 34 (Tex. Crim. App. 1993).
5. Perales v. State, 117 S.W.3d 434, 437 (Tex. App.-Corpus Christi 2003, pet ref'd.); Morrison v. State,
71 S.W.3d 821, 827 (Tex. App.-Corpus Christi 2002, no pet.) (citing Guzman v. State, 955 S.W.2d 85, 89
(Tex. Crim. App. 1997)).
6. Morrison, 71 S.W.3d at 827.
7. Montanez v. State, 195 S.W.3d 101, 106 (Tex. Crim. App. 2006); Morrison, 71 S.W.3d at 827.
8. Willover v. State, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).
9. Villarreal v. State, 935 S.W.2d 134, 139 (Tex. Crim. App. 1996); Romero v. State, 800 S.W.2d 539,
543 (Tex. Crim. App. 1990).
10. Ford v. State, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).
11. Id.
12. Id.
13. Moreno v. State, 124 S.W.3d 339, 344 (Tex. App.-Corpus Christi 2003, no pet.); see also McGee
v. State, 105 S.W.3d 609, 613 (Tex. Crim. App. 2003).
14. Bishop v. State, 85 S.W.3d 819, 822 (Tex. Crim. App. 2002).
15. Id. at 820.
16. Id. at 821.
17. Id.
18. Id. at 822.
19. Handy v. State, 189 S.W.3d 296 (Tex. Crim. App. 2006).
20. Russell v. State, 717 S.W.2d 7 (Tex. Crim. App. 1986).
21. Id. at 9-10.
22. Id. at 11-13; see also Richards v. State, 150 S.W.3d 762, 766-67 (Tex. App.-Houston [14th Dist.]
2004, pet. ref'd) (discussing Russell).
23. Richards, 150 S.W.3d at 767; see also Russell, 717 S.W.2d at 10.
24. Berkemer v. McCarty, 468 U.S. 420, 439 (1984).
25. Terry v. Ohio, 392 U.S. 1, 19-20 (1968). 
26. Id. at 21-22; Davis v. State, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997).
27. Ford, 158 S.W.3d at 492 (citing Balentine, 71 S.W.3d at 768).
28. Zayas v. State, 972 S.W.2d 779, 789 (Tex. App.-Corpus Christi 1998, pet. ref'd).
29. Terry, 392 U.S. at 29.
30. Florida v. Royer, 460 U.S. 491, 500 (1983).
31. St. George v. State, 197 S.W.3d 806, 817 (Tex. App-Fort Worth 2006), pet. granted, 2006 Tex.
Crim. App. LEXIS 2459 (Tex. Crim. App. Dec. 20, 2006). 
32. See Tex. Transp. Code Ann. §§ 545.101, 545.104 (Vernon 1999).
33. $217,590 in U.S. Currency v. State, 54 S.W.3d 918, 924 (Tex. App.-Corpus Christi 2001, no pet.).
34. Terry, 392 U.S. at 22.
35. Ford, 158 S.W.3d at 492.
36. Terry, 392 U.S. at 27.
37. $217,590 in U.S. Currency, 54 S.W.3d at 924.
38. See id.
39. See Ebarb v. State, 598 S.W.2d 842, 844-45 (Tex. Crim. App. 1980); Davis v. State, 989 S.W.2d
859, 864 (Tex. App.-Austin 1990, pet ref'd).
40. See Ebarb, 598 S.W.2d at 844-45.
41. See Alabama v. White, 496 U.S. 325, 330 (1990).
42. Id. at 329-32.
43. Id. at 329-30.
44. See Gates v. Illinois, 462 U.S. 213, 245 (1983).
45. Davis, 989 S.W.2d at 865.
46. See Glass v. State, 681 S.W.2d 599, 601 (Tex. Crim. App. 1984).
47. See Tex. Code Crim. Proc. Ann. art. 38.23(a) (Vernon 2002); Wong Sun v. United States, 371 U.S.
471, 484-85 (1963).
48. We note that in its brief, the State argues that appellant should be estopped from complaining that
the record fails to show reasonable suspicion existed for a continued detention because his objections during
the hearing on the motion to suppress prevented the State from showing the necessity of the detention. At
the hearing, appellant objected to Gill testifying as to the nature of the information relayed to him by the
informant; appellant's objections were sustained.


 From what we can determine, it appears that the State is arguing the doctrine of invited error. See
Prystash v. State, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999) (stating that invited error is properly thought of
as estoppel). The doctrine of invited error applies when the trial court makes a ruling in compliance with a
request from the complaining party, and then on appeal, the complaining party assigns that invited action as
a ground for reversal. First Am. Title Ins. Co. of Texas v. Willard, 949 S.W.2d 342, 348 (Tex. App.-Tyler
1997, writ denied); see also Gutierrez v. State, 659 S.W.2d 423, 424 (Tex. Crim. App. 1983). However, in the
present case, appellant does not complain that his objections should not have been sustained by the trial
court. Rather, appellant complains that the State did not meet its burden of establishing that the officer had
a reasonable suspicion for the prolonged detention; therefore, it was error for the trial court to deny the motion
to suppress. Thus, we find that the doctrine of invited error does not apply in this case.
49. See Zayas v. State, 972 S.W.2d 779, 790-91 (Tex. App.-Corpus Christi 1998, pet. ref'd).