Opinion issued March 17, 2005 







In The
Court of Appeals
For The
First District of Texas




NO. 01-02-01243-CR




RYAN WILLIAM MADDEN, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 248th District Court
Harris County, Texas
Trial Court Cause No. 917531




O P I N I O N
          Appellant, Ryan William Madden, was charged by indictment with two
paragraphs of felony possession of cocaine with intent to deliver. The State
proceeded on the first paragraph alleging cocaine weighing at least 400 grams; the
State abandoned the second count involving cocaine weighing 2.9 kilograms. A jury
found appellant guilty and sentenced him to 30 years in prison. Appellant, in three
points of error, contends that the trial court erred as follows: (1) in denying
appellant’s motion to suppress the evidence collected from the trunk of the rental car
he was driving because he was detained after the traffic offense investigation should
have been completed to allow for a narcotics-sniffing dog to arrive; (2) in denying his
motion for a mistrial after it became known that the videotape furnished to appellant
by the State was misleading and adversely affected appellant’s theory, preparation,
and presentation of his case; and (3) in denying his request for an article 38.23
instruction regarding the legality of appellant’s continued detention after the
investigation on the traffic offense had concluded. We reverse and remand.
BACKGROUND
          On July 10, 2002, Trooper Lawrence Lily of the Texas Department of Public
Safety observed appellant exceeding the speed limit by driving 61 miles per hour in
a 55-miles-per-hour construction zone on Interstate 10. He also observed another 
vehicle, a GMC Jimmy, pass appellant’s car and begin “riding the bumper” of an 18
wheeler at a speed of 63 miles per hour. Both vehicles had Florida license plates. 
Lily had received training regarding the tactics of drug convoys and felt that the
driver of the GMC Jimmy was seeking to divert his attention from appellant’s car by
performing an illegal activity. He proceeded to stop both vehicles for speeding.
          After both vehicles were stopped, Lily identified himself and asked appellant
to step to the rear of his car with his driver’s license. Lily testified that appellant’s
hands were shaking tremendously as he handed Lily his Florida driver’s license. Lily
further noted that appellant’s face was trembling. Lily proceeded to question
appellant on where he was coming from and who owned the car. Appellant indicated
that he was coming from Burlestine [sic] and that the car was a rental. The direction
appellant pointed, according to Lily, did not coincide with the direction appellant said
he was coming from. Lily looked at the rental papers for the vehicle. He found that
the car was rented in Orlando, Florida and that the rental agreement had expired four
days before. Appellant told Lily that he had dealt with the overdue return of the
rental car over the phone. When Lily asked him who he was traveling with, appellant
answered that he was traveling by himself.
          When asked if he had been arrested for anything previously, appellant
responded that he had been arrested for driving while intoxicated. Lily ran a driver’s
license and criminal history check on appellant and was informed that he had been
arrested for larceny in 1996. Lily then requested backup and a Harris County K-9
unit. 
          When his backup, Trooper Kunz, arrived, Lily questioned the people in the
GMC Jimmy. Both of the people in the GMC Jimmy, Michael Johnson and Joseph
Watt, also had Florida driver’s licenses and said that they knew appellant. This, Lily
believed, contradicted appellant’s statement that he was traveling by himself. 
Appellant then told Lily that he misunderstood the question at the time and that he
was traveling with Johnson and Watt. Johnson and Watt claimed that they were
coming from Arlington, Texas and that they had been there for two days. Appellant
told Lily that he stayed with his family while in Texas. However, when confronted
with Johnson’s and Watt’s statements, that they were visiting their family, appellant
changed his story, saying that he was traveling with Johnson and Watt and had stayed
with their family.
          When the K-9 unit arrived, approximately 25 minutes after the request, Lily
asked the K-9 handler, Deputy Peterson, to run his dog around the exteriors of the
vehicles. Peterson did so and informed Lily that the dog positively alerted for some
form of narcotics located both in the trunk of appellant’s rental car and in the back
of the GMC Jimmy. Lily searched the rental car’s trunk and found a container filled
with dog food and a sack containing three bricks of cocaine, a rifle, a shotgun, three
handguns, and ammunition. Two-way radios were also found in both cars. No drugs
were found in the GMC Jimmy.
DISCUSSION
          In his third point of error, appellant contends that the trial court erred by
denying his request for a jury instruction regarding the legality of appellant’s
continued detention after the investigation of his speeding offense should have ended. 
Appellant argues that there are disputed facts regarding the basis for his detention
after the investigation for the speeding offense should have been concluded. 
          Lily testified that one of the six facts that led to his suspicion that appellant’s
vehicle contained contraband, and to his continued detention of appellant, was
appellant’s nervousness, demonstrated by his hands shaking, his fumbling with his
wallet, and his face trembling. Appellant claims that a videotape in evidence does not
show the shaking, fumbling, and trembling that Lily described. 
          After the State and appellant rested, the trial court held a charge conference,
at which appellant proffered two article 38.23 instructions and requested that they be
included in the jury charge. His first requested instruction regarded Lily’s reasonable
suspicion for the initial stop to investigate the traffic offense, and the second regarded
Lily’s reasonable suspicion to continue detaining appellant after the investigation of
the traffic offense ended.


 The trial court granted appellant’s request for the article
38.23 instruction regarding the initial traffic stop, noting that the videotape showed
that appellant had told Lily that he was only going 55 miles per hour, which created
a fact issue as to Lily’s reasonable suspicion to initiate the traffic stop. 
          However, the trial court denied appellant’s request that the jury charge include
the second article 38.23 regarding his continued detention. At the charge conference,
appellant’s counsel argued that the videotape rebutted Lily’s testimony that he
observed appellant’s hands shaking, appellant fumbling with his wallet, and
appellant’s face contorting. The trial court responded to appellant’s argument as
follows:
I think the record is clear on what you are saying are factual disputes. 
I do not think that there are factual disputes to be determined by a jury. 
I think all the things that you are setting out are for an Appellate Court,
if it goes there, to decide whether or not those things rise to the level of
what they believe in 2002 will allow an officer to keep them there the 15
minutes it took to get the drug dog there and I do not think that there are
any factual disputes. I am not going to give you a charge on that . . . .
 
          Once investigation of conduct that initiated a traffic stop is concluded,
continued detention is permitted only if there is reasonable suspicion to do so. Woods
v. State, 956 S.W.2d 33, 35, 38 (Tex. Crim. App. 1997). To demonstrate reasonable
suspicion in this case, the State had to present to the trial court specific articulable
facts, which, when combined with rational inferences from those facts, led Lily to
reasonably suspect that appellant “had engaged, was engaging, or was soon to engage
in criminal activity.” Id. (applying totality of circumstances test for reasonableness
of temporary detention and requiring detaining officer to have specific articulable
facts and rational inferences from those facts, leading him to reasonable suspicion of
criminal activity). See also $217,950.00 in United States Currency v. State, 54
S.W.3d 918, 924 (Tex. App.—Corpus Christi 2001, no pet.) (“A stop based on a
violation of a traffic regulation will not justify detention to await the arrival of a drug
detection dog . . . [which] is necessarily a greater imposition on a motorist than
conducting a search immediately upon the arousal of a reasonable suspicion.”).
          A defendant is entitled to a jury instruction under article 38.23(a) when a fact
issue exists regarding the basis for an officer’s seizure of evidence. Davy v. State, 67
S.W.3d 382, 388 (Tex. App.—Waco 2001, no pet.) (citing Pierce v. State, 32 S.W.3d
247, 251 (Tex. Crim. App. 2000)). When a fact issue is raised, regardless of the level
it rises to, the trial court is statutorily bound to submit an instruction to the jury. See
Jordan v. State, 562 S.W.2d 472, 473 (Tex. Crim. App. 1978) (“The terms of Article
38.23 are clearly mandatory, the only issue being whether under the facts of a
particular case an issue concerning the validity of the search is raised by the
evidence.”); Reece v. State, 878 S.W.2d 320, 324, (Tex. App.—Houston [1st Dist.]
1994, no pet.) (same). 
          Lily testified that he did not think the videotape conclusively showed that 
appellant was shaking, trembling, and fumbling with his wallet. Lily speculated that
this was due to the low quality of the videotape and was not necessarily evidence
contradicting his testimony as to one of the six facts upon which he based his
reasonable suspicion. 
          The question of whether Lily’s testimony about appellant’s conduct is
contradicted by what the videotape shows is a fact issue for the jury to decide; that
is, the jury had to decide whether appellant was shaking, trembling, and fumbling
with his wallet, based on Lily’s testimony and the videotape.
          Therefore, we hold that it was error for the trial court not to give the article
38.23 instruction on the reasonableness of the continued detention. We next apply
the harmless error rule of article 36.19


 to the failure to give the article 38.23
instruction. Middleton v. State, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003).
          Under this standard, when, as here, a defendant has made a timely objection
and there is error, reversal is required if there is “some harm to the accused from the
error.” Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh’g). 
Thus, we must reverse provided the error is not harmless. Id. To determine whether
there is harm, we must evaluate “the entire jury charge, the state of the evidence,
including the contested issues and weight of probative evidence, the argument of
counsel and any other relevant information revealed by the record of the trial as a
whole.” Id. Some harm means any actual harm, regardless of degree. Arline v. State,
721 S.W.2d 348, 351 (Tex. Crim. App. 1986). We may affirm cases involving
preserved charging error only if no harm has occurred. Id. But we must measure the
error’s harmfulness at least in part against the likelihood that the verdict was actually
based on another theory of culpability unaffected by the erroneous charge. Govan v.
State, 682 S.W.2d 567, 570–71 (Tex. Crim. App. 1985), overruled on other grounds
by Brown v. State, 716 S.W.2d 939, 945 (Tex. Crim. App. 1986); see also Atkinson,
934 S.W.2d 896, 897 (Tex. App.—Fort Worth 1996) (analyzing harm after remand
by Court of Criminal Appeals in Atkinson v. State, 923 S.W.2d 21, 27 (Tex. Crim.
App. 1996), overruled on other grounds by Motilla v. State, 78 S.W.3d 352, 356
(Tex. Crim. App. 2002)).
          We begin our harm analysis by analyzing the jury charge itself. See Almanza,
686 S.W.2d at 171. The jury was given an article 38.23 instruction regarding the
initial stop for speeding. The jury charge allowed the jury to resolve that factual issue
in appellant’s favor and not to consider the evidence from the search of the rental car. 
However, the jury here resolved the factual issue regarding the initial stop for
speeding in favor of the State, and the jury charge did not allow resolution of the
factual issue of whether Lily had reasonable suspicion to warrant continued detention.
Had the jury resolved this second factual issue in favor of appellant, then it would
have been instructed not to consider the tainted evidence. 
          We next examine the state of the evidence, including contested issues and the
weight of the probative evidence. See id. The evidence in this case bearing on the
seizure of the drugs consists of, as previously stated, Lily’s testimony, the videotape,
and the drugs. 
          We next examine the arguments of counsel. See id. Appellant’s counsel told
the jury, in opening arguments, that the evidence would show that there was no
reasonable suspicion that would justify appellant’s continued detention. In closing
arguments, appellant’s counsel re-asserted the conflict between the videotape and
Lily’s testimony regarding the signs of nervousness Lily alleged that appellant
displayed. But, as the charge was worded, the jury was not allowed to give effect to
appellant’s counsel’s argument regarding the reasonableness of the suspicion leading
to appellant’s continued detention. The trial court’s denial of appellant’s requested
instruction undermined appellant’s best opportunity to get the jury to conclude that
the cocaine was illegally seized. Moreover, there is no other theory of culpability that
would be unaffected by an erroneous charge. See Govan, 682 S.W.2d at 570–71. The
prosecutor, of course, highlighted the evidence that appellant “was lying and he was
shaking.”
           After examining the entire jury charge, the jury verdict, the disputed and
undisputed evidence, the weight of the probative issues, and the arguments of
counsel, we conclude that the failure to provide an article 38.23 instruction regarding
appellant’s continued detention produced at least some actual harm to appellant. See
Almanza, 686 S.W.2d at 172. Because this issue is determinative, we need not
address appellant’s other points of error.CONCLUSION
          We reverse the judgment of the trial court and remand the cause to the court
below for further proceedings consistent with this opinion. 
 
 
                                                             Sam Nuchia
                                                             Justice

Panel consists of Justices Taft, Nuchia, and Keyes.

Publish. Tex. R. App. P. 47.2(b).