

# NUMBER 13-15-00089-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**ROBERTO SAVEDRA,**                                                       **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                       **Appellee.**

---

### On appeal from the 24th District Court
### of Jackson County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Longoria
### Memorandum Opinion by Justice Rodriguez

Appellant Roberto Savedra appeals from a judgment rendered by the 24th District

Court of Jackson County, Texas.  After a trial before the bench, the trial court found

Savedra guilty of the third-degree felony offense of possession of marijuana in an amount

between five and fifty pounds, and sentenced him to prison for six years. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121 (West, Westlaw through 2015 R.S.).

Savedra raises four issues on appeal complaining that the trial court erred in denying his motion to suppress because: (1) the evidence against him was obtained via an illegal prolonged detention; (2) the search of his vehicle was rendered unconstitutional by the officer's failure to *Mirandize* him prior to requesting consent to search; (3) he did not knowingly and voluntarily consent to the search; and (4) his statement was not knowingly and voluntarily made. We affirm.

## I. BACKGROUND

On February 16, 1999, Trooper Frank Rios with the Texas Department of Public Safety noticed a 1981 Dodge truck travelling northbound on Highway 59. The truck lacked a front license plate, did not have a side mirror on the driver's side of the vehicle, and had a defective muffler. Trooper Rios activated his emergency flashing lights and stopped the vehicle. Savedra exited the vehicle at Trooper Rios' request and voluntarily provided his driver's license. Trooper Rios testified that Savedra appeared more nervous than warranted by a routine traffic stop and would not make eye contact with him. Trooper Rios asked Savedra routine questions regarding his trip: Savedra stated that he was traveling from Brownsville to Louisiana for the purpose of picking up another vehicle. Savedra's wife, Olga Savedra, was also in the vehicle at the time of the stop. Trooper Rios noted that she also appeared nervous, and he asked her the same questions. Olga stated that she did not know where they were going and did not know the purpose for the trip.

As a result of the Savedras' nervous behavior and their inconsistent statements,

2

Trooper Rios testified that he became increasingly suspicious that they were engaged in criminal activity and Trooper Rios asked for and received Savedra's permission to search the vehicle. At this point the Savedras had been stopped for three to four minutes. Trooper Rios had not yet determined whether Savedra had any outstanding warrants, cited him for his driving violations, or written him a warning.

While visually examining the vehicle, Trooper Rios noticed that two non-factory welds on the drive-shaft yoke and that certain bolts connecting the drive shaft had been disturbed even though the universal joint had not been replaced. Trooper Rios determined that he required additional tools to continue the search and asked Savedra to follow him to a garage in Ganado where he could continue his inspection. Savedra again consented and followed Trooper Rios to Ganado. Upon arrival at the garage, Trooper Rios again asked Savedra if he could continue his search—Savedra again consented. Trooper Rios drilled an "inspection hole" into the drive shaft and found that it contained marijuana. Upon dismantling the drive shaft, Trooper Rios discovered 9.60 pounds of marijuana. At all times Trooper Rios and Savedra conversed in English.

Sergeant Pat Brennan, an investigator with the Department of Public Safety Narcotics Service, was called to take Savedra's statement. Sgt. Brennan read Savedra his *Miranda* rights and provided the required warnings. Savedra indicated that he understood his rights, agreed to waive them, and continued to provide his statement. In his statement, Savedra admitted to possessing the marijuana. At all times Sgt. Brennan and Savedra conversed in English.

Though arrested for the offense in February of 1999, Savedra skipped bail on his charge. Fifteen years later, on April 7, 2014, Savedra was pulled over for another traffic

3

offense.   The officer noted Savedra had an outstanding warrant and arrested him. Savedra was returned to Jackson County, Texas for trial.   Savedra waived his right to trial by jury.

Savedra's trial counsel filed a motion to suppress evidence obtained from the search and a motion to suppress Savedra's statement.   The trial court ruled that the motions to suppress were to be carried with the trial.   After the State rested, Savedra's counsel again urged the motions to suppress, which the trial court denied.   The trial court issued findings of fact and conclusions of law.   The trial court found "that there was probable cause for the stop, that the trooper received consent for the subsequent searches, and . . . the statement . . . was voluntary and that [Savedra] had been properly admonished."   After considering all the evidence and argument presented by both parties, the trial court found Savedra guilty of possession of marijuana and assessed a sentence of six years' imprisonment.   This appeal followed.

## II.   PRESERVATION

As a threshold matter, the State contends that Savedra failed to preserve his issues on appeal because they were not clearly raised before the trial court. Preservation of error is a systemic requirement on appeal.   *Blackshear v. State*, 385 S.W.3d 589, 590 (Tex. Crim. App. 2012).   We will not address the merits of an issue that has not been preserved for appeal.   *Id.* at 591.   To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context.   TEX. R. APP. P. 33.1(a)(1); *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012).   A defendant who files a pre-trial motion to suppress evidence must also obtain a

ruling on the admissibility of the evidence.   *See Shedden v. State,* 268 S.W.3d 717, 730 (Tex. App.—Corpus Christi 2008, pet. ref'd).

On appeal, Savedra challenges the searches and his later statement because they were allegedly tainted by an illegal prolonged detention, the searches were performed before an officer read Savedra his *Miranda* rights, Savedra did not knowingly and voluntarily consent to the search, and Savedra did not knowingly and voluntarily waive his rights when he gave his statement.   Savedra's motion to suppress evidence cites the Fourth and Fourteenth Amendments to the United States Constitution, article 1, section 9 of the Texas Constitution, and Chapter 14 and article 1.06 of the Texas Code of Criminal Procedure as bases for suppression.   Savedra also filed a separate motion to suppress the statement he provided Sgt. Brennan, citing the Fifth and Fourteenth Amendments to the United States Constitution, article 1, section 9 of the Texas Constitution, and article 38.23 of the Texas Code of Criminal Procedure.   The trial court denied Savedra's motion.

After reviewing the record, we determine that Savedra's motions and argument to the trial court were made with sufficient specificity to make the trial court aware of his complaints.   *See* TEX. R. APP. P. 33.1(a)(1); *Clark,* 365 S.W.3d at 339.   We disagree with the State that Savedra failed to preserve his issues on appeal.

### III.   STANDARD OF REVIEW

We review the trial court's ruling on a motion to suppress evidence for an abuse of discretion, using a bifurcated standard.   *See Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex. Crim. App. 1997).   We give "almost total deference" to the trial court's findings of historical fact that are supported by the record and to mixed questions of law and fact that turn on an evaluation of credibility and demeanor.   *Id.* at 89.   We review de novo the trial

court's determination of the law and its application of law to facts that do not turn upon an evaluation of credibility and demeanor. *Id.* We will uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

### IV.  PROLONGED DETENTION

By his first issue, Savedra contends that the trial court erred when it denied his motion to suppress because both his consent to the search and his statement to Sgt. Brennan were obtained as the result of an illegal prolonged detention. Specifically, we construe Savedra's argument to contend that the initial traffic stop was complete and the officer's continued inquiry was unwarranted and not based on a reasonable suspicion.

### A.  Applicable Law

"A seizure for a traffic violation justifies a police investigation of that violation." *Rodriguez v. United States,* ___ U.S. ___, ___, 135 S.Ct. 1609, 1614 (Apr. 21, 2015). In the context of a traffic stop, an investigative detention may last no longer than necessary to effectuate the purpose of the stop. *Id.*; *Florida v. Royer*, 460 U.S. 491, 500 (1983); *Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997). Once the purpose of the stop has been satisfied, the stop may not be used for an unrelated "fishing" expedition. *Davis*, 947 S.W.2d at 243. The propriety of the stop's duration is judged by assessing whether the police diligently pursued a means of investigation that was likely to dispel or confirm their suspicions quickly. *Id.* at 245. "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed. *Rodriguez,* 135 S.Ct. at 1614.

The reasonableness of a temporary detention after the tasks tied to the traffic

6

infraction are completed must be examined in terms of the totality of the circumstances and will be justified when the detaining officer has specific articulable facts, which taken together with rational inferences from those facts, lead to the conclusion that the person detained is, has been, or soon will be engaged in criminal activity. *See Woods v. State*, 956 S.W.2d 33, 35 (Tex. Crim. App. 1997); *$217,590 in U.S. Currency v. State*, 54 S.W.3d 918, 923 (Tex. App.—Corpus Christi 2001, no pet.); *Hernandez v. State*, 983 S.W.2d 867, 869 (Tex. App.—Austin 1998, pet. ref'd).

## B. Discussion

On appeal, Savedra does not challenge the reasonableness of the initial stop. Trooper Rios testified that from the time he stopped Savedra until the time he obtained consent to search the vehicle, only three to four minutes passed. It is Savedra's contention that the initial three to four minute stop constituted an unreasonably prolonged detention.

During the three to four minute period, Trooper Rios spoke with both Savedra and Olga, asked them standard questions regarding their trip plans, checked Savedra's license, and visually inspected the vehicle. Trooper Rios testified that he asked for consent to search the vehicle before he concluded the purpose of the stop; he still had to check for warrants and fill out a citation or warning for Savedra to sign. However, based on the Savedras' responses to his questions, Trooper Rios requested consent to conduct further investigation.

Even if Trooper Rios had completed the purpose of his initial stop, he had reasonable suspicion to continue his investigation. *See Rodriguez,* 135 S.Ct. at 1614; *Royer,* 460 U.S. at 500; *Davis,* 947 S.W.2d at 243. Trooper Rios stated that he based

7

his reasonable suspicion on the following articulable facts: (1) Savedra's excessive nervousness, beyond that typically caused by a police stop; (2) Savedra's inability to meet Trooper Rios' eyes; (3) the inconsistent statements provided by Savedra and Olga regarding their trip; and (4) Olga's excessive nervousness, beyond that typically caused by a police stop. Because the Savedras' conduct was reasonably suspicious, Trooper Rios determined the Savedras merited further investigation and requested consent to search the vehicle.

Savedra's detention during Trooper Rios' traffic stop was warranted, Trooper Rios had not yet completed the purpose of the stop, and the stop did not last longer than reasonably necessary to effectuate the purpose of the stop. *See Rodriguez,* 135 S.Ct. at 1614; *Davis*, 947 S.W.2d at 243. Trooper Rios diligently pursued a means of investigation that was likely to dispel or confirm his suspicions quickly. *See Davis*, 947 S.W.2d at 243; *Sims v. State*, 98 S.W.3d 292, 295 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). We determine that Savedra was not subjected to a prolonged detention before Trooper Rios obtained his consent to search the vehicle. We overrule Savedra's first issue.

## V. VALIDITY OF CONSENT

We address Savedra's second and third issues together. By his second issue, Savedra contends that the trial court erred in denying his motion to suppress the evidence obtained as a result of the illegal search. Specifically, Savedra argues that the traffic stop escalated into a custodial detention such that the officer was required to read Savedra his rights before obtaining consent to search the vehicle. By his third issue, Savedra contends that his consent to the search was not voluntarily and knowingly given.

**A.    Applicable Law**

"Under the Fourth and Fourteenth Amendments, a search conducted without a warrant issued upon probable cause is 'per se unreasonable . . . subject only to . . . specifically established and well-delineated exceptions.'" *Rayford v. State,* 125 S.W.3d 521, 528 (Tex. Crim. App. 2003) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)).   A search conducted with the suspect's voluntary consent is one such exception.   *Id.*   The validity of a suspect's consent to a search is a question of fact to be determined from all of the circumstances.   *Id.* (quoting *Ohio v. Robinette,* 519 U.S. 33, 40 (1996)).    The assessment of the voluntariness of consent is objective reasonableness; that is, what a reasonable person would have understood from the exchange between the citizen and the police.   *Valtiera v. State,* 310 S.W.3d 442, 449 (Tex. Crim. App. 2010).   At a suppression hearing, the trial judge is the sole and exclusive trier of fact and judge of the credibility of the witnesses and their testimony. *Rayford,* 125 S.W.3d at 528*.*   In reviewing a trial court's ruling on a motion to suppress, we give almost total deference to a trial court's determination of historical facts.   *Id.* Under the Texas Constitution, the State must show by clear and convincing evidence that the consent was valid.   *Id.*

There is no authority that requires a suspect be read his *Miranda* rights before consenting to a search.   *Id.*   While the failure to inform a suspect that evidence found can be used against him may be one factor to consider, it would not automatically render his consent involuntary.   *See Johnson v. State*, 68 S.W.3d 644, 653 (Tex. Crim. App. 2002) (determining that a police officer's failure to inform accused that he can refuse consent does not automatically render accused's consent involuntary, but is a factor for

9

the court to consider). Nor is consent rendered involuntary merely because the accused is under arrest. *Rayford,* 125 S.W.3d at 528–29 (noting that consent is not involuntary because the suspect is under arrest if the officer's guns are not drawn).

**B.    Discussion**

Savedra argues that Trooper Rios was required to *Mirandize* him before requesting consent to search because he was under arrest at the time he consented to the search.[1] However, the Texas Court of Criminal Appeals has held that consent is not involuntary merely because the accused is under arrest. *See id.* In *Johnson,* the court of criminal appeals found that consent to search was voluntary even though the defendant was handcuffed and arrested, no *Miranda* warnings were given, and no consent to search form was signed, because the officers' guns were not drawn, the officers were in appellant's house pursuant to a valid arrest warrant, and the initial protective sweep was legal. *See* 68 S.W.3d at 652–53. It is uncontested that the initial stop was based on probable cause and we have already determined that Trooper Rios had a reasonable suspicion to continue the investigation. Therefore, the fact that Savedra was not read his *Miranda* rights before he consented to the search does not render his consent invalid. *See Rayford,* 125 S.W.3d at 528–29; *Johnson,* 69 S.W.3d at 652–53.

Savedra further contends that he did not knowingly and voluntarily consent to the searches because he was not aware he could refuse consent and the language barrier prevented him from meaningfully understanding Trooper Rios. We review the voluntariness of Savedra's consent for objective reasonableness. *See Valtiera,* 310

---

[1] We disagree with Savedra's contention that he was under arrest at the time he consented to the search.

S.W.3d at 449. The following are the undisputed facts pertinent to Savedra's consent: (1) Trooper Rios asked for permission to search the vehicle within three to four minutes of the initial stop; (2) Savedra was still with his vehicle at the time he consented to the search; (3) Savedra was not in handcuffs and had not been placed in Trooper Rios' patrol vehicle when he gave his consent; (4) Savedra drove his own vehicle to the body shop for further inspection after consenting to a second search; and (5) Savedra provided written consent to Trooper Rios before the officer drilled into his vehicle's drive shaft.

The trial court entered a finding that "the communications between Trooper Rios and [Savedra] were in English and understood by [Savedra] and that his answers and responses were consistent with the defendant understanding and being able to communicate with Trooper Rios in English." Because the validity of a suspect's consent to a search is a question of fact to be determined from all the circumstances, we give the trial court's findings of fact almost total deference. *Rayford,* 125 S.W.3d at 528.

In giving the trial court's findings almost total deference and considering the undisputed facts set forth above, we determine that the trial court did not err when it denied Savedra's motion to suppress on the basis that Savedra's consent to each of the subject searches was valid. *See id.* at 528–29. We overrule Savedra's second and third issues.

## VI. INVOLUNTARY STATEMENT

By his fourth issue, Savedra contends that the statement he provided to Sgt. Brennan was involuntarily obtained in violation of the Fifth Amendment of the United States Constitution, article I, section 10 of the Texas Constitution, and articles 38.21 and 38.22 of the Texas Code of Criminal Procedure. Specifically, Savedra contends that his

inability to comprehend English and Sgt. Brennan's inability to speak Spanish made the English-only interview presumptively involuntary.

An oral statement of an accused made as a result of custodial interrogation is admissible against the accused in a criminal proceeding if: (1) an electronic recording is made of the statement; (2) before the statement, but during the recording, the accused is given the warnings required by article 38.22; and (3) the accused knowingly, intelligently, and voluntarily waves the rights conveyed by the warning. TEX. CODE CRIM. PROC. ANN. art. 38.22 (West, Westlaw through 2015 R.S.). When a question is raised regarding the voluntariness of a statement of an accused, the court must make an independent determination, by a preponderance of the evidence, that the statement was voluntary. *See id.*; *Vasquez v. State,* 411 S.W.3d 918, 920 (Tex. Crim. App. 2013).

Savedra contends that he did not voluntarily waive his rights because he did not understand the statutory warnings when he consented to the custodial interrogation. Savedra stated that he speaks limited English and that Sgt. Brennan gave the statutory warnings in English.[2] Upon request, the trial court entered findings of fact and conclusions of law regarding the voluntariness of Savedra's waiver. The relevant findings are as follows:

17.    The [c]ourt finds that Sgt. Investigator, Pat Brennan, went over the Miranda Rights with [Savedra] and that [Savedra] fully understood each and every right and that [Savedra] knowingly, intelligently and voluntarily waived such Miranda Rights and agreed to talk to Pat Brennan. As further evidence of these findings of fact, the court incorporates by reference, all of the communications between Pat Brennan and [Savedra] that are reflected in a 25 minute interview which is set forth in State's Exhibit 8.

---

[2] It is undisputed that the statement was electronically recorded and that the requisite warnings were read to Savedra. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 (West, Westlaw through 2015 R.S.).

18.  The [c]ourt finds that Pat Brennan went through each of [Savedra's] rights on State's Exhibit 8 and that [Savedra] stated as to each and every right that he understood that right and wished to waive that right.

19.  The [c]ourt finds that all of [Savedra's] answers to Pat Brennan's questions, as well as [Savedra's] explanation of his answers, clearly indicate that the interview was not coercive, but rather was voluntarily given by [Savedra].

20.  The [c]ourt further finds that [Savedra's] answers and explanations to Pat Brennan's questions in the 25 minute interview clearly show that the defendant understood Pat Brennan's questions and that his answers were responsive to such questions.

21.  The [c]ourt further finds that in such 25 minute interview, [Savedra] never suggested to Pat Brennan that he didn't understand Mr. Brennan's questions or even that he needed Mr. Brennan to further clarify any of his questions.

22.  The [c]ourt further finds that [Savedra] explained why he was smuggling marijuana, which was "for the money", with [Savedra] explaining that neither he nor his wife worked and that they needed additional money besides their welfare check.

. . . .

24.  The [c]ourt further finds that Pat Brennan explained all of [Savedra's] rights not only in legal language, but in more understandable layman terms. For example, Pat Brennan said "if you want to stop, just say stop—Do you understand" Do you understand this right" If you don't want to talk to me, you don't have to—Do you understand that? Do you want to continue?"

And the court concluded that Savedra "understood all of his rights and warnings . . . and that Savedra knowingly, intelligently and voluntarily waived such rights prior to giving his confession as set out in State's Exhibit 8."

The trial court is the "sole and exclusive trier of fact and judge of the credibility of the witnesses" and the evidence presented, particularly where the motion to suppress is based on the voluntariness of a confession. *See Delao v. State*, 235 S.W.3d 235, 238

13

(Tex. Crim. App. 2007). The trial court's ruling is also reasonably supported by the record. *See State v. Dixon,* 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). Based on the totality of the circumstances, we conclude that the preponderance of the evidence supports the trial court's conclusion that appellant knowingly, voluntarily, and intelligently waived his rights before giving his custodial statement. As such, the trial court did not err in finding appellant's statement admissible under article 38.22. *See id.* We overrule Savedra's fourth issue.

## V. CONCLUSION

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
22nd day of October, 2015.

14